HENRIETTA YATES COHEN, Appellant, v. THE NEW YORK MUTUAL LIFE INSURANCE COMPANY, Respondent.

The policy of the law is to mitigate the severity of war, and to relieve citizens, as far as consistent with the interests of the government, from the hardships incident thereto.

The annual premiums paid during the first years of a life policy of insurance are not simply payments for the risk incurred from year to year, but are in excess of the actual risk, and this excess is so much paid in advance for the later years, in case of a prolonged life. The contract, while it is executed by the insured, by the payment of the annual premiums from year to year, is wholly executory upon the part of the insurer. It is a continuing contract, in the sense that it is to be performed in the future, but it is not a contract of continuance in its performance. The act required of the insured is a single act, to be performed at stated periods, and that to be performed by the insurer is single, i. e., the payment of a specified sum upon the happening of a certain event. Such a contract, lawful in its inception,

between the citizens of different States, and where large sums have been paid for premiums, is not dissolved by war between the States. The contract remains; the remedy simply is suspended, but revives with the return of peace.

The occurrence of war between the two States forbids and prevents the transmission of money for payment of the premiums from one State to another, and legally excuses the payment. A condition, therefore, in a life policy forfeiting it and all payments made thereon in case of non-payment of the annual premiums as they fall due, is suspended during the existence of the war, and a tender, after its termination, of the premiums unpaid, with interest upon each from the time it fell due, revives the policy.

An incorporated life insurance company, although organized upon the mutual plan, is not a partnership, and when it has policy-holders in different States it is not dissolved by war between the States.

Although in ordinary cases the courts will not, in advance of any present duty declare the rights and obligations of suitors, yet they will do so where peculiar circumstances render it necessary to the preservation of right.

Plaintiff's complaint alleged, in substance, that defendant, a corporation organized in the State of New York, in 1849, issued to plaintiff, a resident of the State of Georgia, a life policy upon the life of her husband, which policy contained a clause that, in case of non-payment of the annual premiums, "the said policy should cease and determine," and "all previous payments made thereon should be forfeited to the company;" that the annual premiums fell due upon the second of April in each year, and were paid regularly up to and including the year 1861; that plaintiff was ready and willing to pay the premium falling due April 2d, 1862, and those falling due during the existence of the civil war; that, in consequence of the war, all intercourse was interrupted and forbidden by the laws of the United States, and she was thereby prevented from making payment; that, as soon as communication was re-established after the war, she tendered payment of the accrued premiums, but defendant refused to receive them, declaring the policy forfeited. Plaintiff asked that she be allowed to make the payments and the policy be declared valid, or that defendant be compelled to pay back the premiums paid, with interest, and the dividends, etc. Defendant demurred, that the court had no jurisdiction, and that complaint did not state a cause of action. Judgment was rendered sustaining demurrer. *Held*, that the contract was not dissolved, but suspended, by the war; that the payment of the premiums during its existence was legally excused, and the tender revived the policy; that although there has been no loss, yet as there is an actual controversy, and the only parties to it are before the court; as the present rights of plaintiff under the contract are denied; as the contract of life insurance is a peculiar one; and as it is fit and proper the parties should know their rights

under the contract, the case was a proper one for the exercise of the equitable powers of the court; and that the judgment was therefore error.

(Argued September 14, 1871; decided December 24, 1872.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order affirming order of Special Term sustaining demurrer to plaintiff's complaint.

The complaint alleged in substance that defendant was a corporation, organized under the laws of the State of New York; that on the 2d of April, 1849, in consideration of $150 paid them by plaintiff, and of annual premiums of that amount, to be paid thereafter, it executed and issued to her a policy of insurance upon the life of her husband, Octavus Cohen, in the amount of $5,000, for the term of his natural life; that the policy contained the conditions that if the said Octavus Cohen should enter into any military or naval service whatever (except the militia not in actual service), or should die by his own hands, or in consequence of a duel, or by the hands of justice, or in known violation of the laws of any of the States, or of the United States, etc., then said contract or policy should be void. Also, if plaintiff should not pay the said annual premiums, on or before the several days mentioned in the contract, then the company should not be liable for the sum assured, or any part thereof, and that said policy should cease and determine, and also that all payments made thereon should be forfeited to the company; that plaintiff paid the annual premiums, as required by the policy, up to and including the payment due April 2d, 1861; that she was ready and willing to pay the premiums falling due in April, 1862, 1863 and 1864, but that she being a resident of Georgia, and as in consequence of the civil war then pending between the southern States and the government of the United States all intercourse between the citizens of the two sections was interrupted and forbidden by the laws of the United States,

she was prevented from making such payments; that, as soon as communication was re-established, and in December, 1864, she tendered to defendant the premiums that had accrued during the war, but defendant refused to receive the same, and declared the said policy canceled and forfeited. She asked as relief that she might be permitted to make the payments, and that her policy be declared valid, or that defendant be compelled to pay back to her all sums paid upon the policy, with interest, and all dividends declared under the policy, or for such other and further relief, etc.

1. That upon the face of the said complaint it appears that the court has no jurisdiction of the subject of this action.

2. That upon the face thereof it appears that the said complaint does not state facts sufficient to constitute a cause of action.

*Joseph H. Dukes* for the appellant. Mandamus was not a proper remedy. (*Rex* v. *Bank of England*, 2 Barn. & Ald., 620; *Rex* v. *London Assurance Co.*, 5 id., 899; *Rex* v. *Bencher Lincoln's Inn*, 4 B. & C., 855; *Rex* v. *Barnard's Inn*, 5 Ad. & Ellis, 23; *People* v. *Supervisors of Chenango Co.*, 11 N. Y., 573; *Ex parte Fireman's Ins. Co.*, 6 Hill., 24; Angell & Ames on Corporations, § 390; *King* v. *Freefisher's Co.*, 7 East, 353; Grant on Corporations, 290; *People* v. *Mayor of N. Y.*, 10 Wend., 395.) This case is a proper one for the exercise of the equitable powers of this court. (1 Spence Eq. Jur., 433; 2 Story Eq., § 826; *Hochester* v. *De La Tour*, 2 Ellis & Black., 679; *Crist* v. *Armour*, 34 Barb., 378; *Robinson* v. *Cropsey*, 2 Edw. Ch., 138.) Plaintiff is not obliged to wait until the death of the assured to bring this action. (*Taylor* v. *Neville*, 3 Atkyns, 383; *Ball* v. *Coggs*, 1 Brown Parl. Cases, 140; 2 Chitty Gen. Practice, 853–855.) Acquiescence and lapse of time would be a bar in equity to a recovery hereafter. (*Gibson* v. *Fletcher*, 1 Rep. Ch., 32; *Goddard* v. *Goddard*, id., 74; 1 Spence Eq. Jur., 631; Story Eq. Jur., §§ 1520–1522.) The contract was not dissolved by the war, but suspended, and the non-payment of premiums

during the war was legally excused. (*Doughty* v. *Neal*, 1 Saunders Rep. [n.], 216 ; *Wolfe* v. *Howes*, 20 N. Y., 197 ; *Jones* v. *Judd*, 4 Coms., 411 ; *Crist* v. *Armour*, 34 Barb., 378 ; *Cornwell* v. *Haight*, 21 N. Y., 462 ; *Crary* v. *Smith*, 2 Comst., 60 ; 2 Wildman's Int. Law, 8, 15 ; 1 Kent Com., 74 ; act congress, July 13, 1861, Laws U. S., vol. 12, p. 257. § 95 ; President's proclamation, 16 August, 1861 ; 3 Phill. Int. Law, 729, 735 ; *Monongahela Ins. Co.* v. *Chester*, 43 Penn. ; *Conway* v. *Gray*, 10 East., 536 ; *Wood* v. *Edwards*, 19 Johns., 205.)

*H. E. Davies* for the respondent. The proper remedy in this case is by mandamus. (*O'Reilly* v. *Mut. L. Ins. Co.*, ROBERTSON, Ch. J., and cases cited.) This court cannot declare in advance defendant's liability upon the policy held by plaintiff. (*Brooke* v. *Ld. Kensington*, 2 Kay & J. R., 753 ; *Grove* v. *Bastard*, 2 Ph. Ch. Cases, 619 ; *Jenner* v. *Jenner*, Law Rep., 1 Eq., Pt. III, 361 ; *Baylies v. Payson*, 5 Allen Rep., 488 ; Bell's Principles, etc., § 2252 ; *Scott* v. *Onderdonk*, 14 N. Y., 13.) The payment of the premium specified in the policy is a condition precedent to the obligation assumed by defendant. (4 Kent Com., 141 ; 2 Black. Com., 154 ; *Ughland's Case*, 7 Coke ; *Holdipp* v. *Otway*, 2 Saund., 106 ; *French* v. *Campbell*, 2 H. Bl., 178 ; *Wood and others* v. *Nasby*, 6 T. Rep., 710 ; *Oldman* v. *Bewicke et al.*, 1 H. Bl., 577, note ; *Routledge* v. *Burrell*, id., 254 ; *Scott* v. *Tyler*, 2 Bro. Ch. C., 455 ; Co. Litt., 206, *a*, *b* ; 217 *b* ; 218, *a* ; *Popham* v. *Banfield*, 1 Vern., 83 ; *Bertrie* v. *Ld. Falkland*, 3 Ch. Ca., 129 ; 2 Vern., 333 ; *Pike* v. *Butler*, 4 N. Y., 360 ; *Moore* v. *Western F. Ins. Co.*, 12 Wend., 452 ; *Fowler* v. *Ætna Ins. Co.*, 6 Cowen, 673 ; *Duncan* v. *Sun Fire Ins. Co.*, 6 Wend., 488 ; 7 Cowen, 649 ; *Norton* v. *R. and S. Ins. Co.* ; *Cornell* v. *Le Roy*, 9 W end., 163, and authorities cited in these cases ; *Moakley* v. *Riggs*, 19 Johns., 72 ; *Taylor* v. *Cullen*, 6 Cowen. 624 ; *Owen* v. *Farmers' Joint Stock Co.*, 57 Barb., 518 ; *Van Horne* v. *Dorrance*, 2 Dal., 317 ; *Dermott* v. *Jones*, 2 Wall., 1 ; Co. Litt., 206, 218 ;

1 Atkyns, 374, 576; Com. Rep., 732; *Nightingale* v. *State Mut. Ins. Co.*, 5 R. I., 38; *Brown* v. *Overbury*, 34 Eng. L. and Eq. Rep., 610; *Scott* v. *Avery*, 36 L. and Eq. Rep., 1; *Campbell* v. *Am. Pop. Ins. Co.*, Transcript, Feb. 11, 1871; *Lathrop* v. *Greenfield Ins. Co.*, 2 Allen, 82; *Beadle* v. *Chenango Mut. Ins. Co.*, 3 Hill, 161.)   All conditions are strictly construed.   (Bunyan on Life Insurance, 69, 165; *Vyse* v. *Wakefield*, 6 Mees. & Wels., 442.)   When the premium on the policy ceased, the insurance also terminated. (*Patterson* v. *Powell*, 9 Bing., 329; Bunyan on Insurance, 1, 66; *Want* v. *Blunt*, 12 East., 183; 1 Bos. & P., 471; *Phillips* v. *Eastwood*, L. & G., 291; *Mut. Ben. Life Ins. Co.* v. *Ruse*, 8 Ga., 534; 1 Bigelow's Rep., 83; *Howell* v. *Knickerbocker Life Ins. Co.*, 3 Robertson, 232; 1 Bigelow's Rep., 578; *Robert* v. *New England Mut. Life Ins. Co.*, Disney, 353; 1 Bigelow, 634; *Catoir* v. *Am. L. & T. Co.*, 4 Vroom, 487; *O'Reilly* v. *Mut. Life Ins. Co.*, S. C., Nov. 22, 1868, ROBERTSON, C. J.; *Cohen* v *Same*, S. C., June, 1868; *Koelges* v. *Guardn. L. Ins. Co.*, 2 Lans., 480.)   The war terminated the policy, and no act to be done during its continuance could revive or continue it.   (1 Duer's M. Ins., 417, 431; Phil. Ins., 1, § 223; The Emulous, 1 Galls., 594; 3 Kent Com., 255; *Burton* v. *Towers*, 6 T. R., 35; *Furtado* v. *Rogers*, 3 Bos. & P., 191; *Gamba* v. *Le Messurier*, 4 East, 407; *Brandon* v. *Curling*, id., 410; *Bell* v. *Gibson*, 1 Bos. & P., 345; *Odline* v. *Penn. Ins. Co.*, 2 Wash. C. C. R., 321; *Gray* v. *Lewis*, 3 id., 280; *The Julia*, 8 Cranch, 181; *The Rapid*, id., 160; see, also, *The Caledonian*, 4 Whea., 100; *Carrington* v. *Merchants' Ins. Co.*, 8 Peters, 495; *Flindt* v. *Waters*, 15 East, 260; *Harmon* v. *Kingston*, 3 Campb., 153; *Potts* v. *Bell*, 8 Term Rep., 548.)   The tender of the premium to the agent gave the plaintiff no rights. (*Howell* v. *Gordon*, 40 Ga., 302; *White* v. *Madison*, 21 N. Y., 117; *Treadway* v. *Ham. Mut. Ins. Co.*, 29 Conn., 69; *Mut. Ins. Co.* v. *Deane*, 18 Md., 48; *White* v. *Haight*, 16 N. Y., 310; *Hart* v. *Achilles*, 28 Barb., 576.)   Plaintiff paid the premiums voluntarily, and she cannot maintain an action

for them. (*Fleetwood* v. *City of New York*, 2 Sand. S. C. R., 475; *Silliman* v. *Wing*, 7 Hill., 159; *Supervisors of Onondaga County* v. *Briggs*, 2 Denio, 26–39, and cases there cited.)

ALLEN, J. A decision of this appeal has been delayed at the request of parties to other actions pending in this court, like in character in some respects to this, that before the questions involved should be decided, their appeals might be heard.

The importance of the questions at issue induced the court to listen to the request, and this case was substantially re-argued, with *Sands* v. *The New York Life Ins. Co.*, in December last. (*Post* page, 626.)

The legal status of citizens of States at war, and the relation they mutually occupy, as well as the effect of a state of war upon contracts and obligations of the subjects of litigant States, and their right to contract or hold intercourse with each other, have recently been so frequently the subject of judicial discussion and decision in the State and federal courts, that the leading principles by which the intercourse and dealing between enemies, that is, between the inhabitants of States and nations at war, are prohibited or restricted and regulated, and the effect of war upon their mutual contracts and obligations, are quite familiar.

They have been so often repeated in different forms, that a review of them, or a reference at much length to them, would be out of place.

The general principles and doctrines, as found in the treatises of writers upon public law and deducible from the judgments of courts, are firmly established and cannot be ignored or essentially modified by courts at this day. All that courts have to do is to apply the principles thus recognized and settled to cases as they arise. It is said in general terms that, in a state of war, "the individuals who compose the belligerent States exist, as to each other, in a state of utter occlusion," and all intercourse between them is forbidden. (Per

Johnson, J., *The Rapid*, 8 Cranch, 155.) This proposition has been repeated with approval in several later cases. Judge Nelson, in the *Prize Cases* (2 Black., 635, 687), adopting the language of approved writers on international law, says that one of the legal consequences resulting from a state of war is that "the people of the two countries become immediately the enemies of each other; all intercourse, commercial or otherwise, between them unlawful; and all contracts existing at the commencement of the war suspended, and all made during its existence utterly void. The insurance of enemies' property, the drawing of bills of exchange or purchase on the enemies' country, the remission of bills or money to it, are illegal and void; all existing partnerships between citizens or subjects of the two countries are dissolved; and, in fine, interdiction of trade and intercourse, direct or indirect, is absolute and complete by the mere force and effect of the war itself." (See, also, *Jecker* v. *Montgomery*, 18 How., 110; *Hanger* v. *Abbott*, 6 Wallace, 532; *The Onachita*, id., 521; *Griswold* v. *Waddington*, 16 J. R., 438.) These propositions, general and far reaching as they are, were, however, made in cases relating to commercial intercourse, and involved the question as to the legality and effect of commercial dealings and transactions; and the general language used, in legal effect, extends only to intercourse and dealings of that character, although all other intercourse, clearly within the mischief intended to be avoided, would be within the principle, and therefore within the rule itself. I do not understand that it has been authoritatively adjudged that all private contracts without exception, made between citizens or subjects of States at war, are necessarily void, although the language of the courts has been sufficiently comprehensive to include the proposition in its largest extent. The subject is elaborately and ably considered in *Kershaw* v. *Kelsey* (100 Mass., 561), and the authorities, with the reason and extent of the rule under consideration, reviewed and discussed; and the result of the examination was that the law of nations, as judicially declared, prohibits all intercourse

between citizens of the two belligerents, which is inconsistent with the state of war between those countries. This was regarded as including every act of voluntary submission to the enemy, or receiving his protection; any act or contract which tends to increase his resources, and every kind of trading or commercial dealing or intercourse, direct or indirect. The act of congress of July 13, 1861 (12 U. S. Stat. at Large, 257), and the proclamation of the president, pursuant to that statute, only prohibited commercial intercourse between the citizens of the States declared to be in insurrection and the citizens of the rest of the States.

For all the purposes of this action it may be assumed that this rule, thus restricted, would prohibit the making of a contract during a state of war for the insurance of the life of an enemy. This was rather assumed by the counsel for both parties upon the argument. It would certainly forbid the transmission of money for the premium from one of the States at war to the other; and it is said that the life of an alien enemy cannot be insured by his creditor, although the latter be a subject of the same country with the insurer. (Bunyon's Life Assurance, 19.) The authorities cited to sustain this proposition were all, however, cases of insurance upon merchandise. (*Harman* v. *Kingston*, 3 Camp., 150; *Potts* v. *Bell*, 8 T. R., 548; *Flindt* v. *Waters*, 15 East, 260.) The insurance upon the life of the husband of the plaintiff was a valid and lawful contract at the time it was made in 1849, and was "for the term of his natural life," in consideration of a sum paid at the date of the policy, and the further consideration of the annual payment of a like sum on or before the second day of April in every year. This was not a policy from year to year, but an insurance for life, subject to be defeated by the non-performance of the condition prescribed, to wit, the payment of the annual premium. It is expressly declared in the contract of insurance that if the annual payments should not be made, "that said policy should cease and determine," and "that all previous payments made thereon should be forfeited to the company." It was a life

policy. (*Hodsdon* v. *Guardian Life Ins. Co.*, 97 Mass., 144; *Reese* v. *Mutual Benefit Life Ins. Co.*, 26 Barb., 556; *N. Y. Life Ins. Co.* v. *Clopton*, 7 Bush. [Ky.] R., 179.) The contract was not, as to all its stipulations and as to both parties, executory. It was executed by the plaintiff by the payment of the annual premiums from 1849 to and including 1861, while it was wholly executory on the part of the defendant, its undertaking being to pay the amount specified upon the death of the insured. It is no answer to say that the plaintiff had only paid for the risk incurred from year to year. The annual premium paid during the first years of a life policy is in excess of the actual risk; and this excess is so much paid in advance for the greater risk during the later years in case of a prolonged life. The insurers would be greatly the gainers by avoiding all life policies upon young lives after the payment of the annual premiums for ten or fifteen years, terminating the risk before the greater hazard of loss, the result of advanced age, has been incurred. The contract was a continuing contract in the sense that it was to be performed in the future; but it was not a contract of continuance in its performance. The act to be performed by the defendant was a single act, the payment of a specified sum upon the happening of a certain event, and, in this respect, was like a covenant or promise to pay a sum of money at a day certain, or upon any condition lawful in itself. There is no pretence that a contract of the latter kind would be dissolved by war. The contract would remain; the remedy would be suspended. The act to be performed by the plaintiff was a single act, to be performed at stated periods, and was not like the contract of partnerships and some other contracts which are continuous in their performance. In the case of a marine insurance, or a contract of affreightment, a war might act as a dissolution and put an end to them. The first is upon enemies' property, and an insurance is in support of their commerce, and entirely inconsistent with the allegiance due to the government of the underwriter. As to such a contract, the authorities say the insurance terminates abso-

lutely, and at once, by the very act of war, and the parties are in the same condition as if no contract was made; the one loses the premium, and the other his security against loss. But the rule will hardly apply to a life policy when large sums have been paid for premiums. There is nothing in the policy of the law, or the interests of the public, calling for an enforcement of the law of confiscation incident to a state of war, after the war has ceased and the people of the two belligerent nations have again become one, solely for the benefit of one of two contracting parties by the forfeiture of the rights of the other. This would be simply a confiscation of property after war had ceased, at the instance and for the benefit of individuals. By the payment of the annual premium in April, 1861, the life was insured until April, 1862. The engagement of the defendant was then lawful, and was to the effect that the company would pay the plaintiff $5,000 upon the death of her husband within the year. A promissory note in that form, made upon a good consideration, would be obligatory; and if the death occurred within the year, although after war had intervened, the right of action would be suspended during the war, but would revive with the return of peace. There is no reason apparent why the promise to pay money upon the termination of a specified life should necessarily be terminated by the happening of war between the States, of which the parties are respectively subjects, as unlawful and inconsistent with the state of war merely because it is called an insurance upon life. The policy in this instance protects the insurers, and makes void the policy, if the insured enter any military or naval service or dies in the known violation of the laws of the United States, so that the risk was not increased by the state of war, nor the ability of the enemy to fill up the ranks of its army and navy affected by the insurance upon the life of its citizens. Those insured would rather be deterred from taking up arms against the United States lest their policies should be avoided.

Had the insured died at any time before April, 1862, I

think there can be no doubt that the contract would have been regarded as one of those which, lawful when made and executed by the one party, are not dissolved, but merely suspended by the existence of war, and that a recovery could have been had at the close of the war. The contracts between the individuals of belligerent States are necessarily suspended during the war of those States, but are not annulled. (Phill. Int. Law, 666; per NELSON, J., *Prize Cases, supra.*) Mr. Wheaton says commercial partnerships are dissolved by the mere force and act of war, though, as to other contracts, it only suspends the remedy. (Wheat. Int. Law, 8th ed., 403, § 317.)

This is upon the principle that the State and not the individual wages war. The question then remains, whether the non-payment of the annual premium during the years 1862, 1863 and 1864 involved a forfeiture of the policy and of all payments before then made. That such would be the effect of the non-performance of the condition, unless waived or legally excused, is not disputed; and unless the performance was waived by the defendant, or is legally excused by the existence of the war, the plaintiff must fail in her action and submit to the loss resulting from the forfeiture. It must be borne in mind that the war was the act of the States, and that individual citizens are not identified with their governments so as to expose them to the rule of law that he who, by his own conduct, prevents the fulfillment of a contract or renders its performance impossible, shall not take advantage of a non-performance on the other side or excuse the non-performance upon his part. (*Odlin* v. *Ins. Co. of Pennsylvania,* 2 Wash. C. C. R., 312; *Francis* v. *The Ocean Ins. Co.,* 6 Cow., 404; S. C., in error, 2 W. R., 64.) The condition of affairs which made the payment of the premium by the plaintiff during the years named unlawful, and therefore impossible, was not created by the act or default of the plaintiff but resulted from the acts of the governments of which the respective parties were subjects. There is a manifest distinction between mere impediments and difficulties in the

way of the performance of a condition and an impossibility created by law or the act of the government. This is clearly recognized in *Wood* v. *Edwards* (19 J. R., 205); *People* v. *Bartlett* (3 Hill, 570). An individual by his covenant may undertake, as against his own acts and the acts of strangers, but not against the acts of God or his government or of the obligee. (See per NELSON, Ch. J., *People* v. *Bartlett, supra.*) In *Wolfe* v. *Howes* (20 N. Y., 197) the performance of the undertaking became impossible by the act of God in the death of the party, and performance was held excused upon the ground that the parties must be deemed to have made this an exception by implication. So, too, a party is excused from the performance of his covenant when the performance is made unlawful by act of parliament. If made absolutely unlawful, it operates to repeal the covenant; if only temporarily unlawful, it suspends the operation. (*Brewster* v. *Kitchin,* 1 Ld. Raymond, 317.) Lord ALVANLEY, Ch. J. (in *Touteng* v. *Hubbard,* 3 B. & P., 291), says: "But when the policy of the State intervenes and prevents the performance of the contract, the party will be excused." That which will avoid a covenant will nullify a condition, and *vice versa.* (Platt on Cov., 569; *Doughty* v. *Neal,* 1 Saund., 216, note 2.) The policy of the law is to mitigate the severity of wars and relieve citizens, so far as consistent with the interests of the government, from the hardships incident to it; and, *a fortiori,* the stringent and severe rule invoked by the defendant should not be applied in a doubtful case so as to produce extreme hardship, when, by adopting a milder and more equitable rule each of the contracting parties will secure equal and exact justice and all their legal and equitable rights. The operation of the statute of limitations is held suspended during the period of the war by reason of the inability to enforce the claim, and this is in harmony with the benign tendency of the age, the result of advanced civilization. *Hanger* v. *Abbott* (6 Wal., 532), Judge CLIFFORD says: "Neither laches nor fraud can be imputed in such a case." At the time of making the contract in this case the plaintiff had the legal

right and ability to make the annual payments, but the effect of the war was to make the attempt unlawful without any fault on her part. The operation of a condition, as express and absolute as in this case, was held suspended during the war, in *Semmes* v. *Hartford Ins. Co.* (13 Wal., 158). The condition there, as here, was by the act and agreement of the party, and yet its performance being impossible it was held to be inoperative and the time for bringing the action extended, notwithstanding the agreement of the parties, by the mere act and effect of the war. It was held that the disability to sue, imposed on the plaintiff by the war, relieved him from the consequences of failing to bring suit within the time specified in the policy. The same principle would relieve the present plaintiff from the consequences of failing to make the annual payments by the day. She was guilty of no laches, and why subject her to a forfeiture? No injustice is done the defendant in this case by permitting the plaintiff to make, now, the payments which she could not lawfully make between 1861 and 1865.

The interest will compensate for the non-payment at the time, and the defendant, in legal contemplation, will be precisely in the situation it would have been had the money been paid on the law day. *Manhattan Life Ins. Co.* v. *Warwick* (20 Grattan, 614); *N. Y. Life Ins. Co.* v. *Clopton* (7 Bush [Ky. R.], 179); *Hamilton* v. *N. Y. Mut. Ins. Co.*, recently decided in the Circuit Court of the United States, in the southern district of New York, are precisely in point, and, if followed, decisive of this case. The reasonings of the prevailing opinions in these cases abundantly sustain the judgments. The case comes before us on demurrer to the complaint, and if there are any equities or any facts which would deprive the plaintiff of the rights to which the case made by the complaint entitles her, the defendant may set them up by answer.

It was also claimed that the defendant being a mutual company, of which all holders of policies were members, it was a partnership which was dissolved by the war.

Trading and commercial partnerships, and perhaps all partnerships, are dissolved by war between the States of the several partners. But whatever analogies there may be between mutual companies and ordinary partnerships, and the relation of the members of the two organizations, an incorporated company, although organized upon the mutual principle, is in no proper or legal sense a partnership. The defendant is a body politic and corporate, capable of contracting and of suing and being sued, and the relation between the plaintiff and the corporation is that of insured and insurer; and the rights and duties of the contracting parties are to be governed and determined by the terms of the policy by which the insurance is effected, as in other cases. Other and incidental rights are secured to the plaintiff as a member of the company, one of the corporators; but this does not make the members partners as between themselves or affect the express contract of the corporation. If it was a partnership as claimed, and dissolved by the war, the plaintiff has not forfeited her share in the assets of the copartnership, but is entitled to an accounting as of the day of the dissolution, and to her due proportion of the property and assets. This would lead to a result not desired by the defendant.

The defendant also objects to the right of the plaintiff to maintain an action at this time, there having been no loss, and, therefore, no cause of action upon the policy. The allegations of the complaint are that the plaintiff has tendered the premiums due, and that the defendant refused to receive them, and declared the policy canceled and forfeited. This is a peculiar case; and there are many reasons, unless there is some rigid rule forbidding the court to entertain jurisdiction, why it should determine the matters in controversy at this time. 1. There is an actual controversy existing, and the only parties to it are before the court. There is not the reason for declining jurisdiction that presented itself in some of the cases cited by the defendant, as in *Grove* v. *Bastard* (2 Phi. [Eng. Ch., 22], 619), that all the parties in interest could not be heard and their rights determined. 2. Present

rights, under the policy and incident to it, are denied the plaintiff. Her policy having been declared forfeited and canceled, she is excluded from the privileges and denied the rights which belong to her as a member of the company. She is entitled, unless the claim of the defendant is well grounded, at once and at all times to the privileges of other policy-holders, and to be recognized as such.   3. The plaintiff is entitled, if the right to pay the premiums and continue the policy still exists, to pay the arrearages and stop the accruing of interest, and to make the future payments as they accrue and become due without interest, and relieve herself as well of the risk and burden of retaining the money, which of right belongs to the defendant.   4. The contract of insurance, where the policy is to be kept alive by periodical payments, is peculiar, and the duty to pay and the obligation to receive are mutual.   It is somewhat different from a simple obligation to pay money, a tender to perform which would bar an action upon it.   So, too, a receipt or acknowledgment of the payment is customarily given, and is as essential as evidence of the continuance of the contract as is the original policy. The policy-holder is entitled to some evidence of the performance of the condition on his part, if, as is believed, the universal usage is for the insurers to certify in some way the fact that the annual premiums are paid.   5. It is fit and proper that both parties to the contract should know their rights; especially is it important to the plaintiff and the insured that, if this policy is avoided, they may seek insurance elsewhere, and, if valid, that they may perform the conditions of the policy.

In ordinary cases courts will not, in advance of any present duty, obligation or default, declare the rights and obligations of suitors; they will do it where peculiar circumstances render it necessary to the preservation of right.   It was done in *Baylies* v. *Payson* (5 Allen, 473).   Courts of equity depart from the ordinary rules by which their jurisdiction is hedged in, in order to do equity between suitors; and whether a proper case is made for the exercise of the equitable powers of the court necessarily depends upon the circumstances.

(See *Ball* v. *Coggs*, Brown's Parl. R., 296; *Buxton* v. *Lester*, 3 Atk., 383; 2 Story on Eq. Jur., § 826.)

Had the parties made a case containing precisely the facts alleged in the complaint for submission under section 372 of the Code, the court would not have hesitated to entertain jurisdiction and pass upon the merits of the controversy.

The court has jurisdiction, and the judgment must be reversed and judgment given for the plaintiff, with leave to defendant to answer.

CHURCH, Ch. J., PECKHAM and ANDREWS, JJ., concur.

GROVER, FOLGER and RAPALLO, JJ., not voting.

Judgment accordingly.