## SUPREME COURT.

### MARY MEYER agt. THE KNICKERBOCKER LIFE INSURANCE COMPANY.

*Liability of a life insurance company to comply with their arrangement made with the policyholder to give notice of amount of premiums, as they become due, before they can cancel the policy for their non-payment.*

Where a life insurance company, through its agent, on the issuing of a policy of insurance to the holder, arranges with the latter to take payment of the amount of the premium, part in cash and part in credit notes, with interest, and the company thereafter through a series of years make out and deliver to the policyholder, just previous to the time of payment of the premium, a statement of the amount of cash, notes, interest, &c., due, the company cannot suddenly withdraw its agent and terminate this arrangement without any notice or usual statement given to the policyholder, and for the non-payment of the next premium, after such termination, cancel the policy.

The company cannot be allowed to entrap a policyholder, by its action and course of dealing through a series of years, upon which the policyholder relies and both parties act, then suddenly terminate this course of dealing without any notice to the policyholder of any intended change on the part of the company.

*Erie Special Term, March,* 1876.

ON the 20th day of March, 1867, the defendant, through its local agent at the city of Buffalo, issued to the plaintiff a policy of insurance, properly executed, upon the life of her husband, Frederick Meyer, for the sum of $4,000, payable to her on the event of his death, in consideration of the payment by the plaintiff to the defendant of the sum of $200.44, and upon the condition that the plaintiff should pay to the defendant an annual premium of like amount during the lifetime of her said husband; such annual payment to be made

on or before the twentieth day of March, in each year. And further conditioned, that if the plaintiff should not pay the said annual premium in each year as aforesaid, then the said policy should cease and determine, and that all payments made thereon by the plaintiff should, in that event, be forfeited to the defendant. The plaintiff paid and arranged all the annual payments required to keep the policy in force to March 20th, 1874. On the 20th day of March, 1874, the defendant canceled the policy on its books, claiming it had ceased and determined by its terms, and that it was no longer an existing valid contract, for the reason that the plaintiff failed to pay on or before March 20th, 1874, the annual premium required by the terms of the policy to be paid to continue the policy in force after that date.

The defendant declined to receive any payments after March 20th, 1874, insisting that the policy was no longer in force for the reason above stated.

The plaintiff brings this action to be relieved from the consequence of the non-payment of such annual premium and to obtain the judgment of the court that she be permitted to pay the premium, payable on or before March 20th, 1874, and all sums which have become payable by the terms of the policy since that date, with interest; and that upon such payment being made the said policy be adjudged to be in full force and effect, the same in all respects as if said annual premiums had been actually paid as required by the terms of the policy.

*John George Milburn*, for plaintiff.

*H. W. Johnson*, for defendant.

HENDERSON, J. — It is not claimed by the plaintiff that she did pay the annual premium which, by the terms of the policy, it was necessary for her to pay on or before March 20th, 1874, to continue the policy in force after that date,

but it is insisted by her that her failure in this regard was brought about and caused by the neglect and omission of the officer and managing agents of the insurance company to do on their part what she, under all the circumstances of the case, had a right to require of them to enable her to make such payments; and that the defendant ought not to be permitted to cancel her policy and in justification urge this failure to comply with the condition of the policy on her part, the omission having been brought about and caused, in part at least, by the neglect of its managing agents.

It is also insisted by the plaintiff that payment of the annual premiums in accordance with the terms of the policy was waived by the defendant.

That the court will entertain an action of this character and administer relief in a proper case seems to be well settled (*Cohen* agt. *N. Y. Mut. Life Ins. Co.*, 50 *N. Y.*, 610; *Sands* agt. *N. Y. Life Ins. Co.*, 50 *N. Y.*, 526; *Moses* agt. *Bierling*, 31 *N. Y.*, 462; *Hale* agt. *Patton*, 60 *N. Y.*, 233; *The Man. & Tr. Bk.* agt. *Hazard*, 30 *N. Y.*, 226; *Leslie* agt. *Knickerbocker Life Ins. Co.*, 5 *N. Y. Sup. Ct. R.*, 193). The inquiry in this case is, whether the facts disclosed upon the trial sustain the plaintiff's claim, that her omission to pay was caused in whole or in part by the fault of the managing agents of the company.

It appears that the plaintiff at no time from the issuing of the policy to March 20, 1874 was required to pay the annual premiums as stipulated in the policy, but through an arrangement acted upon by both parties she paid a portion of each annual premium in cash, and a credit was given her for a part of each premium, upon which part she paid interest annually in advance. It further appears from the terms of the policy that "this policy is with profits;" and, from the testimony of the president of the company, it appears that the profits are annually declared; that the policyholders are entitled to share in these profits, and that the amount of profits to which each policyholder is entitled is determined

by the annual statement made by the officer of the company; and the policyholder may, if he elects, have his annual dividends applied upon, and in reduction of, the annual premium due from the policyholder; or if the policyholder does not so elect, then the annual profits are credited to the policy and payable upon the death of the insured. It appears that there were profits to be divided each year, and from the course of dealing between the parties it appears that the plaintiff had elected to have the profits to which she was entitled under the policy credited upon the annual premium she was required to pay to keep the policy in force. From the manner in which the payments of the annual premiums had been arranged, and under which arrangement the plaintiff was required to pay and to secure the annual application of her dividends or share of the profits, it became necessary to enable her to know what sum to pay, that a statement should be furnished her by the officers of the company, showing the principal cash sum to be paid, the interest on the sum for which credit was given, the dividends to which she was entitled, the balance required to be paid by her after crediting the dividends, &c.

The officers of the company, in seeming recognition of this necessity, did actually furnish her with such statement annually to March 20, 1874, for her guidance in making her annual payments. Indeed, the president of the company, in his evidence, says that under the policy and the arrangements under which both parties had acquiesced and acted as to payments, the plaintiff could not know, and had no means of ascertaining, what sum she was required to pay on or before the 20th day of March, 1874, to keep her policy in force after that date, other than by the statement showing principal, interest and profits, &c., similar to the statements which had been furnished her in previous years by the officers of the company. In this condition of things the plaintiff caused a letter to be written to the company on the 13th day of March, 1874, directed to the secretary, and which was

received by him at the home office of the company in New York, March 16th, 1874, in the morning, in which she says: "Sir, will you have the kindness and let me know how much you want for the whole year, I am willing to send it down as soon as I have it." This inquiry called for a statement of the amount to be paid by the plaintiff to keep the policy in force one year from March 20th, 1874, and a fair interpretation is that it was an expression of willingness on her part to send it as soon as she should receive the information necessary to enable her to know what sum to send. The plaintiff resided in Buffalo at the time the policy was issued, and the defendant had an agent residing in Buffalo at that time and until a short time previous to the writing of this letter, with whom the plaintiff had dealt exclusively, in making all her payments, and transacting all her business in connection with the policy. This local agent had been withdrawn, but the plaintiff had received no notice or intimation from the company up to the time of writing this letter, that the manner of transacting the business was to be changed, or that she would not receive the annual statement showing the amount to be paid for the year 1874, in ample time to enable her to make payment on or before March twentieth in that year, such as had been furnished her in each previous year.

I think upon all the facts and circumstances that it was the clear duty of the officers of the company to furnish her the usual annual statement, showing the exact amount she was required to pay on or before March 20th, 1874, to keep the policy in force, and to furnish such statement in time to enable her to make such payment on or before that date, even though the letter of March 13th, 1874, had not been written at all, and no request had been made by her for such statement. Such information was necessary to enable her to make payment. The officers of the company knew it to be necessary. It had uniformly been furnished her in years before without any request on her part, and from this uniform course of dealing she was led to believe and might fairly rely upon

such information being furnished before any advantage would be taken of her non-payment. This course of dealing had been going on for several years. The defendant cannot be allowed to entrap a policyholder by its action and course of dealing through a series of years, upon which the policyholder relies and both parties act; then suddenly terminate their course of dealing without any notice to the policyholder of any intended change on the part of the company. Besides, the letter of March 13th, 1874, fairly notified the officers of the company that the plaintiff required the necessary information to enable her to know what sum to pay under the policy and course of dealing which the defendant had sanctioned. She had the right to this information, and I think it was the duty of the officers of the company to have promptly furnished it to her. It was a duty that the defendant owed to her, and which its officers must discharge of necessity before she could pay, or at least to have notified her that the previous manner of payment would not be continued, and that she would be required to pay in accordance with the conditions of the policy. They did not answer her letter, or furnish her any information, remaining silent until June following, when they notified her that her policy was canceled for non-payment of the premium due March 20th, 1874; and I think it may be fairly inferred that the omission on the part of the plaintiff to pay the annual payment on her part was brought about by the neglect and disregard by the officers of the company of their duty to her.

I do not think it very material to this inquiry to determine whether the plaintiff actually inclosed a post-office order of thirty-five dollars in the letter of March thirteenth or not, but it seems from the evidence that such order must have been inclosed. I think the plaintiff could have paid her annual premiums in quarterly payments, under the arrangement she made with the agent of the defendant, until she was notified that such arrangement was terminated and that she must pay annually. But I do not think this is a very import-

Meyer agt. Knickerbocker Life Insurance Company.

ant inquiry in this case, for the reason that the plaintiff did not propose to stand by that arrangement, she indicating in the letter of March thirteenth that she was willing to pay for the whole year as soon as she could ascertain what sum was necessary to pay.

It is insisted by the defendant's counsel that the plaintiff should have no relief in this action, for the reason that there is no proof of any payment or tender of the premium which became due March 20th, 1876. I do not think this position of the learned counsel tenable, for the reason that the defendant had notified the plaintiff that her policy was terminated, canceled and of no force, and that the officers of the company had declined to receive any money upon it in payment of the premium of 1874 and 1875, and declined to recognize the policy as having any validity, insisting that it was terminated by the non-payment of the premium due March 20th, 1874. I do not think that, under the circumstances, it was required of the plaintiff, in order to preserve her rights, to go through with the idle ceremony of tendering the premium due March 20th, 1876.

The plaintiff must have judgment permitting her to pay all premiums, payable and remaining unpaid, with interest; and upon such payment being made, or tendered, the policy declared to be in full force and effect, with costs.