cannot force a person upon the exchange, as has been been frequently held.

While a seat on the exchange is to a certain extent property, subject to certain conditions, which may be taxed under specific provisions of law (Matter of Hellman, 174 N. Y. 254, 66 N. E. 809, 95 Am. St. Rep. 582), the proceeds of which may pass to a trustee in bankruptcy (Page v. Edmunds, 186 U. S. 596, 23 Sup. Ct. 200, 47 L. Ed. 318), it would only be when the Stock Exchange itself acted and disposed of the seat that the proceeds thereof would become available.

I do not think that there was any direct obligation placed upon the defendants by the instrument of February 4th to institute the proceedings to procure the expulsion of Charles B. Ketcham and the ultimate sale of his seat; nor do I think that any proper demand was made upon the defendants looking to that result. The indebtedness of Charles B. Ketcham has been greatly reduced since the instrument of February 4, 1910, was given, and this reduction has been accomplished by the sale of all of his other securities which the defendants held as collateral. They retain in their possession all of the securities claimed by the plaintiff; lots 1 and 2 specifically pledged for the security of her account and lots 3 and 4 specifically pledged by her for the security of her account and her husband's. These accounts amount in the aggregate to about $44,000, and what basis she has for a suit in equity to recover the possession of such securities we fail to discover.

The judgment appealed from should be reversed, and the complaint dismissed, with costs to the appellant.

INGRAHAM, P. J., and McLAUGHLIN and LAUGHLIN, JJ., concur. DOWLING, J., dissents.

---

DANNER v. EQUITABLE LIFE ASSUR. SOCIETY OF UNITED STATES.

(Supreme Court, Appellate Division, First Department. May 2, 1913.)

1. INSURANCE (§ 136*)—KNOWLEDGE OF PROVISIONS OF CONTRACT—PRESUMPTIONS.

A party procuring a policy of life insurance from a company which issued different kinds of policies, and by its application called upon the applicant to indicate which kind he desired, was chargeable with knowledge of the provisions of his policy, and conclusively presumed to have received the kind of policy he desired, and to have understood and assented to its terms and conditions.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 219–230; Dec. Dig. § 136.*]

2. INSURANCE (§ 368*) — NONPAYMENT OF PREMIUMS — RIGHTS OF INSURED AFTER DEFAULT.

A tontine life insurance policy provided that no dividend should be allowed or paid, unless insured should survive completion of the tontine period, and unless the policy should then be in force; that all surplus or profits derived from such tontine policies as should not be in force at the completion of such periods should be apportioned among such policies as should complete such periods; that upon the completion of such period insured should have the option to withdraw in cash the ac-

cumulated reserve as therein specified and in addition the surplus apportioned to that policy, to convert the policy· into a paid-up policy for an equivalent amount, to continue the insurance for the original amount and apply the tontine dividends to subsequent premiums, or to withdraw in cash the accumulated surplus and continue the policy on the ordinary plan; that previous to completion of the tontine period the policy should have no surrender value in cash or in a paid-up policy; that if the policy should remain in force after the completion of such period it should be entitled to all the rights and privileges of ordinary policies; and that if any premium should not be paid when due the policy should be void. In the application insured answered affirmatively a question whether he desired a tontine policy, described as being one whereby "surplus" was only participated in at the expiration of the tontine period, whether he agreed that no allowance should be made on policies lapsing during the tontine term, and whether he waived the provision of Laws 1879, c. 347, which provides for paid-up or temporary insurance in case of forfeiture for nonpayment of premiums, unless its provisions are waived in the application and notice of the waiver printed on the face of the policy, and also a question whether he agreed that any allowance for the reserve value which might be due in case of a lapse should be applied to the purchase of paid-up insurance and not to the purchase of temporary insurance, and waived and relinquished all right or claim to any surrender value other than that provided in the policy, whether required by statute or not. Notice of the waiver of chapter 347 was printed on the face of the policy as required. *Held,* that upon a default in the payment of premiums during the tontine period insured was not entitled to a paid-up policy to the amount of the accumulated reserve, since the policy provided that during such period it should have no surrender value, and insured acquired no additional rights by defaulting, and the application was not inconsistent with the policy and did not entitle insured to share in the reserve, or merely preclude him from sharing in the surplus; the provision of the application that the reserve value should be applied to the purchase of paid-up insurance evidently applying to a lapse after the tontine period, if the policy was thereafter continued in force.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 194, 936, 939; Dec. Dig. § 368.*]

Appeal from Trial Term, New York County.

· Action by James M. Danner against the Equitable Life Assurance Society of the United States. From a judgment adjudging that there has been no forfeiture of a life insurance policy for $30,000 issued to the plaintiff by the defendant, and that the beneficiaries named therein, within 60 days after satisfactory proofs of his death, shall be entitled to the sum of $5,484 as paid-up insurance to which he became entitled upon the lapsing of the policy by his failure to pay the quarterly premium of $209.70, due on the 19th day of April, 1891, defendant appeals. Reversed, and complaint dismissed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

Charles W. Pierson, of New York City (William Carrell Diamond, of New York City, on the brief), for appellant.

John J. Cunneen, of Buffalo (William W. Niles, of New York City, on the brief), for respondent.

LAUGHLIN, J. The policy was issued on the 20th day of July, 1882, and was known as a "Tontine savings fund policy" and a life

policy, as distinguished, from endowment. The premiums were payable quarterly, and the tontine period was 20 years. It therefore expired on the 19th day of July, 1902. The plaintiff was unable to pay the premium which fell due on the 19th day of April, 1891, and on which, by the terms of the policy, he had one month of grace, and of which he had due and timely notice. He applied in advance for an extension of time, but it was not granted, and he defaulted in making the payment. It is alleged, in substance, and the defendant admits that it took the position, and has ever since maintained it, that the plaintiff by such default forfeited his right to all premiums theretofore paid, aggregating $7,339.50, and that it was under no obligation to make any payment to him or to his beneficiaries on account of surplus or profits or dividends or reserve, or to issue to him or them a paid-up policy in any amount. It is alleged that the plaintiff, within 60 days after the premium became due, requested the defendant to accept the same, and that he and his wife, who is one of the beneficiaries, "demanded an equitable surrender value of said contract of insurance, but defendant refused this." The defendant admitted that the premium was not paid, but denied these allegations; and the only evidence in support of them is an answer to a question propounded to plaintiff on direct examination as to who, representating the defendant, refused to issue to him a paid-up policy of insurance. He answered that it was in the office of the defendant in April, 1891, and that he thought it was the actuary.

The action is brought to have the status of the parties determined, and to have the amount of paid-up insurance to which the plaintiff is entitled adjudicated, and to compel the defendant to execute and deliver to the plaintiff a policy therefor. On the plaintiff's theory of the case, nothing further is due or payable from him to the defendant which the defendant refuses to receive, and that important element which existed in the cases in which a court of equity has taken jurisdiction and adjudicated with respect to the status of the parties during the lifetime of the insured, where an unfounded claim of forfeiture was made (see Cohen v. N. Y. Mutual Life Ins. Co., 50 N. Y. 610,. 10 Am. Rep. 522; Meyer v. Knickerbocker Life Ins. Co., 73 N. Y. 516, 29 Am. Rep. 200; Hayner v. Insurance Co., 36 N. Y. Super. Ct. 211, affirmed 62 N. Y. 620; s. c., 35 N. Y. Super. Ct. 266. See, also, Langan v. Supreme Council, 174 N. Y. 266, 66 N. E. 932; Kelly v. Insurance Co., 186 N. Y. 16, 78 N. E. 584, 9 Ann. Cas. 661), is absent, and it is contended upon this ground, and upon the further ground that the beneficiaries are necessary parties (see, however, Kerr v. Insurance Co., 69 Hun, 393, 23 N. Y. Supp. 619), that the action is not maintainable (Lyon v. Union Mut. Ins. Co., 17 N. Y. Supp. 756,[1] Gen. Term, First Department; Kerr v. Insurance Co., supra). In the view we take of the case, it is unnecessary to decide whether, if the defendant were in error in contending that the policy and all rights. thereunder have been forfeited, the action would lie at this time, or whether the beneficiaries would be necessary parties.

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 63 Hun, 629.

The claim of forfeiture is predicated upon the fact that the default in paying the premium occurred *during* the tontine period.

[1] It appears that defendant issues different kinds of policies of life and endowment insurance, and that by the form of application for a policy of insurance it calls upon the applicant to indicate which kind he desires. The plaintiff is chargeable with knowledge of the provisions of the policy, and in deciding the issues presented in this action it must be *conclusively* presumed that he received the kind of a policy he desired, and that he understood and assented to terms and conditions.

[2] The policy issued to the plaintiff provides on its face that it "is issued and accepted upon the condition that the provisions and requirements, printed or written by the society, upon the back of this policy are accepted by the assured as part of this contract, as fully as if they were recited at length over the signatures hereto affixed." There were printed on the back of the policy, under the heading, "Provisions and Requirements Referred to in This Policy," among other clauses, the following:

"1. That this policy is issued under the tontine savings fund plan, the particulars of which are as follows:

"2. That the tontine dividend period for this policy shall be completed on the nineteenth day of July in the year nineteen hundred and two.

"3. That no dividend shall be allowed or paid upon this policy unless the person whose life is hereby assured shall survive the completion of its tontine dividend period as aforesaid, and unless this policy shall be then in force.

"4. That all surplus or profits derived from such policies on the tontine savings fund assurance plan, as shall not be in force at the date of the completion of their respective tontine dividend periods, shall be apportioned equitably among such policies as shall complete their tontine dividend periods.

"5. That upon the completion of the tontine dividend period on July 19th, 1902, provided this policy shall not have been terminated previously by lapse or death, the said James M. Danner shall have the option either: First, to withdraw in cash this policy's entire share of the assets, i. e., the accumulated reserve, which shall be eighty-three hundred and eighty-seven 70/100 dollars, and in addition thereto the surplus apportioned by this society to this policy; secondly, to convert the same into a paid-up policy for an equivalent amount; * * * thirdly, to continue the assurance for the original amount, and apply the entire tontine dividend to the purchase of an annuity to reduce the subsequent premiums falling due upon this policy, provided that in any year in which the amount derived from such annuity, together with the annual dividend on this policy, shall exceed the amount of premium due thereon, the excess shall be paid in cash to said James M. Danner or assigns; or, fourthly, to withdraw in cash the share of the accumulated surplus apportioned by said society to this policy, and continue the policy in force on the ordinary plan.

"6. That previous to the completion of its tontine dividend period this policy can have no surrender value in cash or in a paid-up policy. * * *

"8. After the completion of the tontine dividend period, while this policy shall remain in force, it shall be entitled to all the rights and privileges of ordinary policies of the same age and kind. * * *

"12. * * * When the premium is made payable in semiannual or quarterly installments, that part of the year's premium, if any, which remains unpaid at the maturity of this contract, shall be regarded as an indebtedness to the society on account of this contract, and shall be deducted from the amount of the claim; and if any premium or installment of a premium on this policy shall not be paid when due, this policy shall be

void; and no credit for surplus accumulated on this policy shall be deemed applicable to the payment of any premium.

"13. The contract between the parties hereto is completely set forth in this policy, and the application therefor, taken together, and none of its terms can. be modified, nor any forfeiture under it waived, except by an agreement in writing, signed by the president, vice president, actuary, secretary or assistant secretary of the society, whose authority for this purpose will not be delegated. * * * "

The indorsements on the policy embrace, among other things, the following: "Tontine Savings Fund Policy," and in italics, "No dividend will be declared on this policy until the 19th day of July, 1902." These provisions must have indicated to the plaintiff quite clearly that the defendant intended to issue a policy·upon which he should neither receive dividends nor participate in surplus profits, unless he survived the tontine period, and the policy should then be in force; and that the surplus or profits to which he would be entitled at the expiration of the tontine period, if the policy were then in force and he alive, should, in the event of his prior death or of the lapsing of the policy before the expiration of that period, be apportioned equitably among other similar policy holders entitled to share in surplus or profits.

Paragraph 6 on the back of the policy very clearly shows that the plaintiff could not *surrender* the policy during the tontine period and receive any cash or a paid-up policy in any amount therefor. It would scarcely be expected that he would have any greater rights, benefit, or advantage by *defaulting* in the payment of a premium. It is perfectly plain that the day before he defaulted in paying the premium the policy had no cash or paid-up insurance surrender value; but it is contended by the learned counsel for the plaintiff that by *defaulting* in paying the premium he became entitled to paid-up insurance, which he could obtain in no other manner during the tontine period. It will be seen, however, that paragraph 5 indicates that the policy would be terminated by default in paying a premium during the tontine period; and it is expressly provided in paragraph 12 that failure to pay a premium when due would render the policy void.

The learned counsel for the plaintiff contends that these provisions printed on the policy are inconsistent or in conflict with the application for the insurance and the statutory law of our state, which is the sovereignty under which the defendant was incorporated.

Attention is drawn to chapter 347 of the Laws of 1879, which, so far as material, provides as follows:

"Section 1. Whenever any policy of life insurance hereafter issued by any company organized or incorporated under the laws of this state, after being in force three full years, shall by its terms lapse or become forfeited for the nonpayment of any premium, * * * unless the provisions of this act are specifically waived in the application, and notice of such waiver written or printed in red ink on the margin of the face of the policy when issued, the reserve on such policy, including dividend additions, calculated at the date of the failure to make any of the payments above described, according to the American experience table of mortality, and with interest at the rate of four and a half per cent. per annum, * * * shall, on demand made, with surrender of the policy within six months after such lapse, be taken as a single premium of life insurance at the published rates of the company at the time the policy was issued, and shall be applied, as shall have· been agreed in the application and policy, ·either to continue the in-

surance of the policy in force at its full amount so long as such single premium will purchase temporary insurance for that amount, at the age of the insured at the time of lapse, or to the purchase upon the same life at the same age, paid-up insurance payable at the same time, and under the same conditions, except as to payment of premiums, as the original policy: Provided, that if no such agreement be expressed in the application and policy, the said single premium may be applied in either of the modes above specified, at the option of the owner of the policy; notice of such option to be contained in the demand hereinbefore required to be made to prevent the forfeiture of the policy, * * * but such insurance shall not participate in the profits of the company."

The company evidently intended, as a condition precedent to issuing this form of policy, to require a waiver of provisions of the statute with respect to *defaults or lapses* occurring *during* the tontine period. It required the applicant to state, in answer to the sixth question in the application, whether he desired the policy to be issued on the tontine savings fund plan, described in the question to be one "whereby surplus is only participated in at the expiration of the tontine period, according to the provisions made in the society's form of tontine policy" then in use, and in the same question inquired whether he specifically waived "the provisions of chapter 347, Laws of New York of 1879, in regard to paid-up or temporary insurance in case of forfeiture," and whether he agreed "that no allowance should be made on policies lapsing during the tontine term." He answered these three questions embraced in one sentence, "Yes." Notice of the waiver was printed on the face of the policy, as required by the statute. There is no force in the contention that this waiver was limited to the *surplus* and does not include the reserve. In answer to the fourth question in the application he stated the amount of insurance desired, and the kind of policy to be "life," as distinguished from endowment. The principal contention made in behalf of the respondent that the waiver is limited to surplus is based upon the twenty-seventh question, to which the plaintiff answered, "Yes." That question is as follows:

"Does the person, in consideration of the agreements contained in the policy hereby applied for, agree that any allowance for the reserve value which may be due or made in the case of the lapse of policy proposed, shall be applied to the purchase of paid-up assurance, payable at the same time and on the same conditions (except as to the payment of premiums) as the original policy and not to the purchase of temporary assurance, and waive and relinquish all right or claim to any other surrender value than that provided in the policy, whether required by a statute of any state or not?"

It will be observed that there is no agreement here that the policy to be issued shall have a reserve value if it is allowed to lapse, and there is an express waiver and relinquishment of surrender value not specified in the policy, even though provided by statute.

The defendant was required to maintain, from the premiums received, a reserve fund for the payment of policies; and the surplus funds of the company, over and above the requirements for the reserve fund, are paid to the policy holders as dividends according to the terms of the different classes of policies.

It is now conceded that the plaintiff, owing to the lapse of his policy during the tontine period, is precluded from sharing in the *surplus,* as distinguished from the *reserve;* but it is contended that he

was entitled to paid-up insurance based upon his proportionate interest in the reserve fund, which is readily ascertainable, and there is no controversy with respect to the amount. It is contended on behalf of the plaintiff that by paragraph 13 on the back of the policy the application and the policy together constitute the contract, and that question 27 shows, if answered in the affirmative, that if the policy lapsed its reserve value was to be applied to the purchase of paid-up insurance.

The fundamental difference between the respective contentions made on this appeal with respect to the application for insurance is that counsel for the respondent claims that question 27 relates to the lapse of the policy *at any time,* whether *during or after* the tontine period, and counsel for the appellant argues that it relates merely to policies *continued* after the expiration of the tontine period, pursuant to the third or fourth option, as hereinbefore quoted from the back of the policy, and that the insurance company in this regard desired, by requiring an answer to that question, to have the applicant specify whether or not, in the event that the policy should be thus *continued* after the expiration of the tontine period and allowed to lapse by his failure to pay a premium, the reserve value of the policy at that time should be applied to the purchase of a *smaller amount* of paid-up insurance payable at his death, as distinguished from paid-up insurance for the *same amount* as the original, but running for a limited period only, referred to in the statute and in this question as *temporary insurance.* It will be observed that by virtue of paragraph 8 of the provisions and requirements on the back of the policy the policy, when continued after the tontine period, is entitled to all the rights and privileges of ordinary policies of the same age and kind. It follows logically from this that the policies so continued may become lapsed by the failure to pay a premium; but in that event the policy would not become forfeited, because ordinary policies of the same age and kind would not be forfeited. The provisions of the statute with respect to paid-up insurance, which the plaintiff had expressly waived, required that "ordinary policies of the same age and kind" should, in these circumstances, be given the benefit of one of two kinds of paid-up insurance purchasable by its *reserve value,* which is the only value it would have after the settlement at the expiration of the tontine period. It was manifestly intended by the answer required to this question to have the applicant for insurance elect in that event to have the reserve value applied in payment of a smaller amount of paid-up insurance, instead of continuing the policy for the *whole* amount temporarily for a fixed period of time measured by its reserve value. Question 27 is not entirely clear, and is somewhat misleading, but the construction here given harmonizes and gives effect to all provisions of the application and policy.

It follows that the judgment should be reversed,. with costs, and the complaint dismissed upon the merits, with costs. All concur.