Scott, J.
Had the plaintiff in error a right to declare the policy, in controversy, forfeited, for the non-payment of the annual payment falling due October 31, 1873? Under the circumstances disclosed by the evidence offered -on the trial, we are clearly of opinion that it had no such right.
A similar policy of insurance had been issued to plaintiffs below, by the Home Mutual Insurance Company, in 1868. This was effected through one Holtman, a local agent of "the company, residing in the neighborhood of the assured.. He took their application, received the premium then paid, and delivered the policy to them, agreeing at the same time that he would give them notice before the maturing of each annual premium, and would collect the same at their residence.
This arrangement was complied with by the parties, and the premiums were regularly collected at the residence of ■the assured, till October 14,1871; when the risk -was transferred to plaintiff in error, and the policy in question was substituted for that of the Home Mutual. Iioltman’s agency was continued by plaintiff in error; by Mm the change of policies -was effected; and to Mm the assured paid the premiums falling due in 1871, and 1872. He collected these premiums as before, representing to the assured that the change of companies would induce no change in the manner of collecting the premiums. Whether this local agent, Holtman, had authority to bind the company by a verbal agreement at variance with the terms of the policy, we need not stop to inquire. The assured had a •right to show what had been the uniform custom and practice of both the insurance companies in regard to the payment of premiums. On this uniform, and perhaps liberal, mode of dealing between the parties, the assured had a right to rely; and to assume, that it would not be changed to their prejudice, without notice to them. Gfood faith required no less than this. Eor, “ forfeitures are odious, and ■enforced only where there is the clearest evidence that that was what was meant by the stipülatious of the parties. *463 There must be no cast of management or trickery to entrap a party into a forfeiture.” Helme v. Philadelphia Life Ins. Co., 61 Penn. St. 107.
But in October 1873, the company not only failed to give notice to the assured, and send a collector, as usual, for the premium then falling due, but, through its secretary and business manager, it actively intervened to prevent notice being given. The local agent was instructed not to call for the premium, and to give no notice to the assured of, the time for its payment, in order that the company might get rid of this undesirable policy, by declaring it forfeited, if the premium was not paid on the day prescribed by its terms.
It is scarcely necessary to say that no right of forfeiture could arise from a default studiously procured by such disreputable strategy. Plaintiffs below, in their petition, characterize this conduct of the company as an attempt “ to cheat and defraud said plaintiffs out of their moneys already paid;” and we think the evidence sustains the allegation.
Plaintiffs below, in a few days, ascertained that the local agent had resigned his position, and thereupon tendered the amount of the premium to the company, at its office in, Cincinnati, and we think the acts of the company, in refusing to accept the premium, and give a renewal receipt therefor as had been the usual custom, and in declaring the policy forfeited, were unmistakably wrongful and fraudulent.
But it is claimed by counsel for plaintiff in error, that if plaintiffs below were entitled to any redress, they have mistaken their remedy. Their amended petition in the court below is somewhat inartificial; but it evidently seeks a rescission of the contract evidenced by the policy of insurance, and demands thereupon a judgment against the company for the amount of the premiums which it has received from them, with interest thereon from the times of their respective payments. "What other remedies were open tp the insured ? The policy contains but one express stipula *464 tion on the part of'the insurance company: that is, to pay the sum in which the joint lives are insured to the survivor upon the death of either of them; provided the annual premiums are regularly paid, etc. Now, since the contingency upon which this liability of the company depends has not yet happened, could an action be maintained to recover damages for its breach ? Counsel for plaintiff in error have argued at length, and with much force, that no such action could be maintained. Perhaps they are right, though upon this mooted question we express no opinion. It is enough to say that such right of action is by no means’ clear.
There are, no doubt, implied obligations devolved on the company by the terms of the policy, among which are the duty to accept and receipt for the annual premiums when duly tendered by the insured. Could an action be maintained to recover damages for the breach of such implied obligations, leaving the question of the company’s liability on its express promise still open ? It has recently been held by the Supreme Court of Connecticut that this can not be done. (We refer to the case of Day v. Conn. Gen. Life Ins. Co., not yet regularly published, in which counsel have furnished us with the able opinion of Judge Carpenter.)
We have no doubt that the plaintiffs below might, without resorting to equity jurisdiction, have adopted another course. They might have continued to tender the premiums as they became due till the policy, by its terms, would become payable, and the survivor might then, by action on the policy, test the question of forfeiture. Rut this cause would furnish a. very inadequate protection to the clear rights of the insured. Eor, as was said by the New York Court of Appeals : “ The contract of insurance, where the policy is to be kept alive by periodical payments, is peculiar, and the duty to pay and the obligation to receive are mutual. It is somewhat different from a simple obligation to pay money, a tender to perform which would bar an action upon it. So, too, a receipt or acknowledgment of *465 the payment is customarily given, and is as essential as evidence of the continuance of the contract as is the original policy. The policy-holder is entitled to some evidence of the performance of the condition on his part, if, as is believed, the universal usage is for the insurers to certify in some way the fact that the annual premiums are paid. And it is fit and proper that both parties to the contract should know their rights; especially is it important to the insured that if the policy is avoided they may seek, insurance elsewhere, and if valid, that they may perform the conditions of the policy.” Cohen v. N. Y. Mut. L. Ins. Co., 50 N. Y. 625.
Eor these and other reasons the equity jurisdiction of'the court to declare the legal status and rights of the parties was, in that case, maintained. So, in Hayner v. The American Popular L. Ins. Co., 69 N. Y. 435, the same doctrine was held.
In the case before us the plaintiff in error sought, by an act of bad faith and dishonesty, to release itself from the whole obligation and liability incurred by its contract of insurance — it wrongfully refused to allow the insured to perform the contract on their part by paying the premiums as they matured — it refused to 'give them the proper and necessary evidence of the continued life of the policy, except upon terms which there is good reason to believe the company knew to be impossible. Eor, while it was so anxious to forfeit the policy as to resort to dishonorable, stratagem for that purpose, it voluntarily offered, as its sec-, retary testifies, to renew the policy upon satisfactory proof of the continued good health and soundness of both, the parties insured.
Under these circumstances, the insured having no- adequate and clear remedy at law, we think they are entitled to relief in equity, either by a decree, which shall- determine the status of the parties by adjudging the policy to be in full force, as was done in the New York cases to which we have referred, or by an entire, rescission of the *466 contract on just and equitable terms. And we think the party insured may elect whether he will have the contract specifically performed or entirely rescinded.
The insurance company has no right to complain if the insured demand a rescission of the contract which it wrongfully, and by an act of bad faith, has declared to be terminated by forfeiture, and which it refuses to perform, on its part, by accepting and giving renewal-receipts for the annual premiums when duly tendered. "We think the only question is in regard to the terms upon which the rescission should equitably be ordered.
Plaintiffs below asked in their petition that, as a result of the rescission, they should be allowed to recover back 'the premiums paid, with interest thereon from the times of payment. This measure of redress was granted them by the judgment of the court below, and the question arises whether the court erred iu so doing.
In McKee v. Phenix Life Ins. Co., 28 Mo. 383, it was held that where the defendant, the insurance company, had wrongfully determined the contract by refusing to receive a premium when due, the party insured had a right to recover all the money which had been paid under it.
And in Helme v. Phila. Life Ins. Co., already referred to, which was an action of the same kind, no doubt seems to have been entertained by the Supreme Court of Pennsylvania of the right of the insured to recover back the premiums paid, if the company wrongfully refuses to receive a premium when duly tendered. And upon principle how stands the case ? The plaintiff iu error, by an act willfully wrongful, has declared its liability as an insurer terminated by a forfeiture of the policy, and refuses any longer to carry the risk assumed by the terms of its contract. And this it does before any loss has arisen to itself, or any benefit has been derived from the risk to the insured. The partial performance of the contract has been wholly on the part of the insured, and has consisted only in the payment of premiums. They have, so far, received nothing of value from the company which it might be *467 against equity or good conscience to retain. They are in no better condition than they would be if no policy had been issued. If the company receives no compensation for the l’isk which it carried for sevei-al years, this result is attributable only to its own willful default. It can not equitably be allowed to retain any part of the premiums received, whilst it wrongfully deprives the insured of all benefits which might hereafter arise to them from their payment. In regard to the compensation to which the insurer might equitably be entitled in a case where the risk is terminated without fault on his part, we think it unnecessary, for the purposes of this case, to inquire. Ve are of opinion that defendants in error were entitled to the relief which they asked and obtained in the court below.
It is objected, however, that the court below miscalculated the aggregate amount of the premiums paid, and the interest accruing upon them respectively, from the times of their payment, and rendered a judgment in excess of the true amount. "We have made a computation, and find the objection is not without foundation. The evidence shows that the cash payments of premiums and interest made on the policies were as follows: October 31, 1868, $34.87; October, 1869, $51.37; October, 1870, $51.37; October, 1871, $39.47; October, 1872, $37.43. Computing interest on tírese several payments, till the 1st of February, 1875, we find the aggregate sum to be $268.89.
The court below rendered a judgment for $305.84, which is found to be the amount of these payments, including interest thereon, till February 1, 1875. This Was $36.95 in excess of the true amount, and, to that extent, the judgment below will be modified, and, in all other respects, be affirmed.
As a result of this partial reversal, the costs of this proceeding in error will be equally divided between the parties.
Johnson, Chief Judge, did not sit in the case.