remedy at law. This is held in the case of Shaw v. Dwight, 27 N. Y. 244, 84 Am. Dec. 275, where Chief Justice Denio uses this language:

"And even where it is sought to subject land by removing an obstruction to the plaintiff's execution, I am of opinion that a fieri facias should be returned unsatisfied, for the purpose of showing that the plaintiff is under the necessity of asking the aid of the court on account of his inability to collect his debt by process against the debtor's goods or chattels, but not for the purpose of perfecting his lien upon the land, for that is bound as strongly as it can be by the docketing of the judgment."

It follows that, before the plaintiff can maintain this action to annul the title which the defendant Patterson has acquired, he must make a bona fide effort to collect his judgment from the judgment debtor Harrie. G. Chapin, to the extent, at least, of issuing an execution to the county where that defendant resides.

Plaintiff's complaint must be dismissed, with costs.

---

(62 Misc. Rep. 403.)

RUSSELL v. PITTSBURGH LIFE & TRUST CO. et al.

(Supreme Court, Special Term, New York County. February, 1909.)

1. CORPORATIONS (§ 507*)—SERVICE OF PROCESS.
    Under Code Civ. Proc. § 431, providing that service may be had on a domestic corporation by delivering the summons to the cashier or treasurer, a service on the acting cashier or treasurer of a life insurance company was a valid service.

    [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1983; Dec. Dig. § 507.*]

2. CORPORATIONS (§ 668*) — FOREIGN CORPORATIONS — SERVICE OF PROCESS — "MANAGING AGENT."
    Where a foreign corporation has an office in the state, in charge of the person who acts for the corporation, doing business for it, he is a "managing agent," within Code Civ. Proc. § 432, on whom service of process could be had.

    [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2611; Dec. Dig. § 668.*

    For other definitions, see Words and Phrases, vol. 5, pp. 4320–4323.]

3. INSURANCE (§ 55*)—MUTUAL INSURANCE COMPANY—TRANSFER OF ASSETS—INJUNCTION.
    A policy holder of a mutual life insurance company can sue to restrain the transfer of the assets of the company to a corporation doing business without the state, as such policy holder has a quasi ownership in such assets.

    [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 68; Dec. Dig. § 55.*]

4. INSURANCE (§ 55*) — MUTUAL INSURANCE COMPANY — TRANSFER OF ASSETS—RECEIVER.
    A transfer of the assets of a mutual life insurance company to a foreign corporation for an inadequate consideration will be restrained, and a receiver appointed pendente lite to preserve such assets.

    [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 68; Dec. Dig. § 55.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by one Russell against the Pittsburgh Life & Trust Company and the Washington Life Insurance Company. Motion to restrain transfer of assets and for appointment of receivers. Motion granted.

Frank E. Carstarphen, for plaintiff.

Henry A. Rubino, for defendant Pittsburgh Life & Trust Company.

Parker, Hatch & Sheehan (E. W. Hatch, of counsel), for defendant Washington Life Insurance Company.

ERLANGER, J. The plaintiff, claiming to be a policy holder of the Washington Life Insurance Company, brings this action on behalf of himself and other policy holders of that company similarly situated, and the application before me is for an injunction and receiver pendente lite, founded upon these facts: The Washington Company was incorporated in 1860 under the act of 1853, entitled "An act to provide for the incorporation of life and health insurance companies." Laws 1853, p. 887, c. 463. It carried on the business for which it was organized in this state down to the execution of the contract of December, 1908, to which reference will be made, and which defendants term a "contract of reinsurance." The defendant the Pittsburgh Life & Trust Company is a Pennsylvania corporation not authorized to do business in this state. Its powers are very broad, embracing the right to carry on the business of a trust company and banking, of accident insurance, and of a health insurance company. It, however, has not exercised all of its powers, being engaged only in the business of life, health, and accident insurance. It is to be noted that the Washington Company is not engaged in the business of accident insurance. In September, 1908, the Pittsburgh Company acquired, by purchase, more than a majority of the stock of the Washington Company, which at that time had an outstanding paid-up capital stock of $500,000. After obtaining this controlling interest the Pittsburgh Company caused the board of directors of the Washington Company to resign, and the new board elected and the officers selected were substantially the same as the board and officers of the Pittsburgh Company. The president and vice president of both companies were the same. The second vice president of the Washington Company was the secretary of the Pittsburgh Company, and the secretary of the Washington Company was one of the directors of the Pittsburgh Company. The new board of the Washington Company consisted of 17 members, a majority of whom were selected from the board of directors of the Pittsburgh Company. The defendants admit that all the stock of the Washington Company that was purchased from any source was held for the Pittsburgh Company, and it is alleged by them that all but 45 shares, out of 10,000 shares of the capital stock of the Washington Company, are held for the Pittsburgh Company, and of these 45 shares arrangements have been practically completed for acquiring 30 shares thereof for the Pittsburgh Company. The latter company thus dominating and controlling the Washington Company, an agreement was entered into between the two companies on December 30, 1908, which the defendants call a "contract of reinsurance," by the terms of which the

Washington Company is made to sell and transfer to the Pittsburgh Company, so far as known, all its properties, securities, moneys, all books and papers relating to policy holders, all due and accrued interest, rents, premiums, loans, notes of every kind, and all its interest in all premiums thereafter payable to the Washington Company upon or by reason of any of its policies. Indeed, the transfer was so comprehensive as to include all its furniture and fixtures. The Pittsburgh Company, in consideration thereof, undertook to reinsure and agreed to pay all the liabilities of the Washington Company under its outstanding policies. Thereupon, under the title which it assumed to have acquired under this assignment, the Pittsburgh Company, on the day of the execution of this instrument, withdrew from the offices of the Washington Company all of its books, records, and securities, and carried and removed them from this state to its home offices in Pittsburgh. Immediately thereafter it issued a notice to the policy holders of both companies calling attention to "the merging of the business of the two companies."

Before considering the merits of the application, it is necessary to pass upon the preliminary objection, raised by the defendants, that the court has not acquired jurisdiction over the defendants because of the failure to make proper service, and to preserve their rights the defendants have appeared specially for the purpose of raising this objection. It is suggested by the plaintiff that, inasmuch as the defendants have answered to the merits, this objection has been waived. I cannot so hold. The defendants proceeded to the merits on the suggestion of the court that the entire matter be disposed of in one argument, without prejudice, and if the court concluded that it had no jurisdiction over the defendants that would dispose of the motions, and the merits would not be considered. The papers upon these applications were served upon one C. P. Haviland, representing the Washington Company. It appears that Haviland was in charge of the office of said company, and received and collected premiums, which were paid to that company at its home office, and there is submitted a receipt, signed as recently as January 2, 1909, for premiums upon the policy of the plaintiff, which is signed by said Haviland as "cashier." By section 431 of the Code of Civil Procedure service may be made upon a domestic corporation by delivering the summons to "the cashier" or "treasurer." I am satisfied that the service upon Haviland, acting as cashier or treasurer of the Washington Company at its home office, was valid service upon that company. The service upon the Pittsburgh Company was made by delivering the papers to F. E. Montgomery and also to C. P. Haviland. At the time of this service the Pittsburgh Company had not made a designation, pursuant to section 432 of the Code of Civil Procedure of a person upon whom process could be served, and it also appears that none of the officers specified in subdivision 1 of section 432 could be found after due diligence. The Pittsburgh Company has property in this state, consisting of the St. James Building, of the value of over $3,000,000, which is in charge of the said F. E. Montgomery, who collected all the rents of the property and had general supervision thereof, and who was

made a director of the Washington Company after the Pittsburgh Company had obtained control. All the property, therefore, which the Pittsburgh Company had in this state, was managed by Montgomery, and all moneys that he collected and received he transmitted to that company. There was no officer, director, superintendent, or manager of the Pittsburgh Company in this state superior to Montgomery, and his management and direction was not of a small interest, but of the entire property of the company within the state, and of the value mentioned. Haviland, the other party upon whom the process was served, collected all the premiums which were paid at the home office of the Washington Company and transmitted the moneys to the Pittsburgh Company subsequent to the date of the assignment of December 30, 1908. So that whatever business was done in this state in the interest of the Pittsburgh Company passed through the hands of Montgomery and Haviland, and could only be transacted with these two persons; Montgomery managing all its tangible property and Haviland receiving the cash paid by way of premiums. It was reasonably certain that the company would be apprised of the service if made upon these representatives. Indeed, there was no other person managing its property upon whom service could be made.

Under the conditions presented by the proof before me, service could be made upon a managing agent of the corporation or the cashier or treasurer. It may be at times difficult to determine when a representative of a corporation answers the description of managing agent; but it is clear on these facts that Montgomery was a managing agent of the Pittsburgh Company within the meaning of section 432 of the Code of Civil Procedure. Where a corporation has an office in this state, which is in charge of a person who acts for the corporation, doing business for it, and so manages its business, he is within the meaning of the statute "a managing agent." Tuchband v. C. & A. R. R., 115 N. Y. 437, 22 N. E. 360; Ives v. Met. Life Ins. Co., 78 Hun, 32, 28 N. Y. Supp. 1030; Mullins v. Same, 78 Hun, 297, 28 N. Y. Supp. 959. The statute does not mean that the whole business of the corporation shall be in charge of the agent, to constitute him a managing agent. "Every object of the service is attained when the agent served is of sufficient character and rank to make it reasonably certain that the defendant will be apprised of the service made. The statute is satisfied if he be a managing agent to any extent." Palmer v. Penn. Co., 35 Hun, 369, affirmed 99 N. Y. 679. "Any person holding some responsible and representative relation to the company, such as the term 'managing agent' would include, might be served with the summons." Coler v. Pittsburgh Bridge Co., 146 N. Y. 281–283, 40 N. E. 779, 780. If the object of the service of a summons is to advise the defendant of the commencement of the action, so that it might protect its rights, the object was fully accomplished in this case. Brayton v. N. Y., L. E. & W. R. R., 72 Hun, 602, 25 N. Y. Supp. 264; Perrine v. Ransome H. Gas Co., 60 App. Div. 32, 69 N. Y. Supp. 698; Young & Fletcher Co. v. Welsbach L. Co., 55 App. Div. 16, 66 N. Y. Supp. 1024; Persons v. Buffalo City Mills, 29 App. Div. 45, 51 N. Y. Supp. 645; Barrett v. Am. Tel., etc., Co., 56 Hun, 430, 10 N. Y.

Supp. 138; affirmed 138 N. Y. 491, 34 N. E. 289; Pope v. Terre Haute Car & C. Co., 87 N. Y. 137.

Besides, it may well be claimed that the service upon Haviland was service on the "cashier" or "treasurer" within the state. Other than Montgomery, the only person to whom moneys could be paid for the Pittsburgh Company—after it had acquired ownership by assignment of the property and policies of the Washington Company—was Haviland, and such person who receives the money of the corporation and handles all the cash in the office of the company in this state is a "cashier," within the meaning of this section of the Code. McCulloh v. Paillard Nonmagnetic Watch Co., 60 Hun, 578, 14 N. Y. Supp. 491. In that case the General Term of this department said:

"Foreign corporations doing business in this state cannot be allowed to shelter themselves under the claim that they have no cashier, no managing agent, and no officers within the state, and that therefore they are at liberty to violate the rights of the citizens of this state with impunity. Such a claim is simply preposterous."

While the Pittsburgh Company was not authorized to do business in this state, it owned and through its agent managed over $3,000,000 of property, and by reason of a so-called merger contract, made in this state, claimed ownership to over $50,000,000 of policies, of which the premiums aggregated many hundreds of thousands of dollars. To say that the two individuals representing that company in this state and controlling so much of its property and funds do not answer to the designation of "managing agent" or "cashier" or "treasurer" is, as stated in the McCulloh Case, "simply preposterous."

This brings us to a consideration of the merits. The first objection which must be considered is whether plaintiff is a policy holder of the Washington Company. The policy upon which plaintiff relies to give him a standing was issued on December 15, 1890, on the application of the plaintiff. It provides that, in consideration of the payment of the premiums for 20 years, the last payment to be made September 15, 1910, the company insures the life of the plaintiff in the sum of $5,000, to be paid to his wife and children equally, or the survivor, and, if no survivors, to plaintiff's executors, administrators or assigns. The premiums have been regularly paid by him, and in the application which is made a part of the policy, in answer to the question, "To whom shall the endowment be paid in case the insured survived the stipulated period?" plaintiff answered that he reserved it to himself, and in view of that request and stipulation there was stamped on the side of the policy the following: "The full reserve on this policy shall be payable as within provided to the insured"—and this reserve is stated in the policy to amount to $1,720 at the expiration of 15 years and $2,570 at the expiration of 20 years. It seems clear, therefore, that, if a policy holder can maintain this action, the plaintiff is in a position to apply to the court to protect his rights under the policy. In the policy before the court the insured has reserved to himself an interest in a fund, and has therefore an immediate and direct personal interest. But, even if this policy were viewed as a contract for the benefit of persons other than the plaintiff, he could maintain the suit

as the trustee of an express trust. Section 449, Code Civ. Proc.; Hunt v. Provident Savings, etc., Socy., 77 App. Div. 338, 79 N. Y. Supp. 74.

If the defendants' contention were correct, and a policy were issued on the life of an applicant, payable to his executors or administrators, there would be no one to commence an action to preserve the integrity of the contract of insurance during the lifetime of the insured. But defendants claim that, even if the plaintiff is a policy holder, he has no standing in a court of equity for the redress sought, because, it is argued, he occupies the position simply as a creditor whose claim is not in judgment. The Washington Company, although a stock company, is conducted on the mutual plan, and the surplus of its profits above a limited dividend to the stockholders is equitably applied for the benefit of the policy holders. The policy in question has a reserve and surrender value, which is fixed and payable at specified periods. Although a policy holder may technically be said to occupy the relation of creditor to a corporation, in a company such as this he is likened more to that of an associate or capitalist furnishing the money upon which the business is conducted. Lord v. Equitable Life Assur. Socy., 109 App. Div. 252–263, 96 N. Y. Supp. 10. In Brown v. Equitable Life Assur. Socy., 151 Fed. 1, 81 C. C. A. 1, in which the bill charged specific acts of waste, mismanagement, and unauthorized diversion of funds, the Circuit Court of Appeals held that a policy holder had a right to appeal to a court of equity for relief. This action is not to recover upon the policy, but to prevent the diversion of its assets. "In a purely mutual company the whole body of policy holders at any given time whose policies are not yet matured have a quasi ownership in all the assets of the corporation, and are, like stockholders of an ordinary corporation, in effect cestuis que trustent." Young v. Equitable Life Assur. Socy., 49 Misc. Rep. 347–361, 99 N. Y. Supp. 446, 455; affirmed 112 App. Div. 760, 98 N. Y. Supp. 1052. If the policy holders have no redress, who is there who may institute the action? The Pittsburgh Company, according to its affidavits, has acquired practically all the outstanding stocks of its vendor, and surely the policy holders are not compelled to stand mute and helpless while the property, which is a trust fund for their benefit, is being stealthily removed to a foreign state. It would be appalling if a court of equity in such a situation would close its doors against policy holders. On authority, as well as principle, the policy holders have a standing to maintain this action.

The defendants, however, seek to justify the acts complained of by the contention that the transaction amounts to a reinsurance, permitted by section 22 of the insurance law (Laws 1892, p. 1940, c. 690). That section provides that:

"Every insurance corporation doing business in this state may reinsure the whole or any part of any policy obligation in any other insurance corporation."

Without considering whether that would include a reinsurance in a foreign corporation not authorized to do business in this state, it is very clear that:

"The general power to make contracts of reinsurance on its risks does not authorize a company to transfer all its business and its assets, which constitute

a trust fund for its policy holders, to another company, and such a contract is void." 25 Cyc. 781.

Reinsurance does not mean a "merger." If a company reinsures its risks, it is still doing an insurance business; and the liability of the first insurer to the insured is not affected by the reinsurance. People ex rel. Continental Ins. Co. v. Miller, 177 N. Y. 515, 70 N. E. 10. What has been done here was not a mere reinsurance of a risk in "whole or in part," but a sale and transfer of all the "properties, securities, and moneys," and all its books and papers relating to policy holders, and every right which the Washington Company had in any of its policies. It was in effect a general assignment, and so understood by the parties, as indicated by their conduct. All the property of the Washington Company was taken possession of and removed by the Pittsburgh Company, and the policy holders notified that the companies had "merged." If the Washington Company were only a stock corporation, and not so safeguarded as is an insurance company for the protection of its policy holders, such a transaction as the one before the court would be condemned on the application of a minority stockholder, where both corporations are controlled by the same set of directors. Farmers' Loan & Trust Co. v. N. Y. & N. R. Co., 150 N. Y. 410, 44 N. E. 1043, 34 L. R. A. 76, 55 Am. St. Rep. 689. A contract of insurance implies that the insurance company will retain its assets in its own possession and continue its business (Mason v. Cronk, 125 N. Y. 496, 28 N. E. 224); and if it disables itself from the performance of such contract a policy holder is excused from further performance on his part and is not obliged to pay premiums to a company which has parted with its reserve (People v. Empire Mutual Life Ins. Co., 92 N. Y. 105). Therefore every policy holder of the Washington Company could refuse to continue paying premiums, and the assignment to the Pittsburgh Company was a wholesale breach of its contracts of insurance.

This condition is emphasized when it is considered that the company to which the policy holders of the Washington Company are turned over is one not authorized to do business in this state; that it is only engaged in the insurance business since 1903; that its assets, as stated in its last annual report of December 31, 1907, amounted to $4,484,406, while the Washington Company at that time had assets of $18,653,942.62; and that at that time the Pittsburgh Company had insurance in force of $27,123,187, while the business of the Washington Company exceeded that amount by over $30,000,000. The protection which the insurance laws of our state afford policy holders are not given as fully and broadly by the statutes of Pennsylvania; so that by this transfer the policy holders of the New York company are substantially transferred without their consent to the Pittsburgh Company. The extent of the possible injury which may accrue to them is readily grasped when we consider that all the assets of the Washington Company have now been made subject to claims by policy holders of the Pittsburgh Company, and subject, further, to the risks of the "life, health, and accident insurance" business of said company and such other business as it may under the charter elect to conduct. Any judgment which

may be obtained against the Pittsburgh Company may now be satisfied out of the assets of the Washington Company. This conduct of the directors of the Pittsburgh Company, acting as directors of the Washington Company, cannot be justified under the euphonious name of "reinsurance."

It is just to state that since the service of papers upon this motion the assets and securities which were carried away have been returned to the vaults of the Washington Company. The agreement, however, under which the return was made, has not been submitted to the court; but the affidavit of Mr. Rubino states that under the terms of an agreement entered into January 11, 1909, not only have the assets and securities heretofore turned over to the Pittsburgh Company been returned, but in addition assets owned by the latter company exceeding in value the legal reserve of the Washington Company. But these assets and securities have not been returned as property of the Washington Company, to enable it to conduct its business as it had theretofore, but only "as collateral security for the guarantee by the Pittsburgh Life & Trust Company of the fulfillment of the policy and obligations of the Washington Life Insurance Company." So that the title to the assets and securities still remain in the Pittsburgh Company, without any waiver by it of any of the rights it acquired by the assignment of December 30, 1908, and subject to all the liabilities of the Pittsburgh Company, and without the right or power in the Washington Company to continue its business. Not only that, but on the termination of this motion there is nothing to prevent the Pittsburgh Company from again removing the property out of the state.

It is urged by the defendants that the Attorney General was entitled to notice of this application, as required by chapter 378, p. 558, Laws 1883, and the Code provisions. Notice would be necessary if this were an action for the dissolution of the corporation or a distribution of its assets. This is not such an action. No dissolution is sought—indeed, the proceeding is to prevent a practical dissolution. The receiver applied for is not of the corporation, but of property claimed to have been unlawfully disposed of. The appointment works no change in the title. The plaintiff seeks a chancery—or, as it is sometimes called, a common-law—receiver, not a statutory one, for the purpose only of maintaining the status quo. Reusens v. Manufacturing & Selling Co., 99 App. Div. 214, 90 N. Y. Supp. 1010; Sigua Iron Co. v. Brown, 171 N. Y. 488, 64 N. E. 194; Keeney v. Home Ins. Co., 71 N. Y. 396, 27 Am. Rep. 60.

The Attorney General, however, has submitted an affidavit, through his deputy, from which it appears that the Superintendent of Insurance and the insurance department are engaged in verifying the list of assets, to determine whether they have been completely, restored to the vaults of the Washington Company. Annexed to his affidavit is a letter of the Attorney General, bearing date January 11, 1909, wherein he states the Pittsburgh Company, through its attorneys, has announced its intention to at once make application for permission to do business in this state. Although a month has passed by since that letter was written, the court is not advised that such application has been made, or, if made, granted. The Attorney General, however, of-

fers no suggestion, excepting to call attention to the fact that a receiver will involve great expense to the company and will impair its credit. But this suggestion adds nothing to the situation, because the credit of the Washington Company can scarcely be more seriously impaired than it has been by its own act since the Pittsburgh Company acquired absolute sway over it. The property being here, its is well to prevent its future removal.

The court hesitated long before concluding to appoint receivers and to find a way to limit the relief to an injunction to restrain the removal of the property pendente lite. But the difficulty is that by the assignment referred to the title to all the property has changed, and pendente lite the Washington Company cannot carry on its business without a receiver. Not only that, but the policy holders would, if not protected by a receiver, be justified in refusing to pay their premiums as they mature, and bring numberless actions to recover damages against the company for the value of their policies at the time of the so-called merger (People v. Empire Mutual Life Ins. Co., supra), thus tending to destroy a business and its property which has taken almost half a century to construct and accumulate; and, finally, in the absence of a receiver, the assets would remain subject to the hazard of the business of the Pittsburgh Company and its policy holders and creditors.

The motion must be granted to the extent of restraining the Pittsburgh Company from removing, assigning, disposing of, pledging, or incumbering the properties, securities, moneys, and assets of the Washington Company, and appointing receivers during the pendency of the action of the assets, properties, securities, books, papers, policies, moneys, stocks, bonds, mortgages, and choses in action heretofore belonging to the defendant Washington Company, and by it assigned and delivered to the Pittsburgh Company, and the receivers should have authority to resume and carry on the business of the Washington Company until the trial; which can soon take place, to protect and conserve the interests of its policy holders, creditors, and stockholders.

Settle order on notice, at which time receivers will be named and the amount of the undertaking fixed.