RUSSELL v. PITTSBURGH LIFE & TRUST CO. et al.

(Supreme Court, Appellate Division, First Department. May 7, 1909.)

INSURANCE (§ 55*) — STOCK CORPORATIONS — TRANSFER OF ASSETS — SUITS BY STOCKHOLDERS.

A policy holder of a domestic stock life insurance corporation, conducted on the mutual plan above a limited dividend to the stockholders, cannot sue to restrain a transfer of the assets of the corporation to a foreign stock insurance corporation pursuant to a contract for the merging of the two corporations; but the remedy for the wrongs complained of must be sought by the officers having supervision of the corporation and its acts under the laws regulating the business of insurance.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 68; Dec. Dig. § 55.*]

Appeal from Special Term, New York County.

Action by William Hepburn Russell against the Pittsburgh Life & Trust Company and another. From an order granting an injunction and giving leave to apply for an amendment providing for the appointment of a receiver or receivers, both parties appeal. Reversed on defendants' appeal, and plaintiff's appeal dismissed.

See 115 N. Y. Supp. 950.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Frank E. Carstarphen (William Hepburn Russell, of counsel, and Alva Collins, on the brief), for plaintiff.

Parker, Hatch & Sheehan (Edward W. Hatch, of counsel), for Washington Life Ins. Co.

Henry A. Rubino (Frederick M. Czaki, Miles M. Dawson, and Frank Ewing, on the brief), for Pittsburgh Life & Trust Co.

CLARKE, J. The complaint alleges: That the plaintiff is, and since December 15, 1890, has been, a policy holder of the Washington Life Insurance Company. The policy insures the life of plaintiff in the sum of $5,000, for the sole use of his wife and children, for the term of his natural life, with participation in profits as provided. That the Washington Life Insurance Company is a New York corporation, having a capital stock of $500,000, incorporated in 1860. That on December 31, 1908, said defendant had in number about 28,000 policy holders. That plaintiff brings this action in his own behalf and also in a representative capacity for and in behalf of all other policy holders having like rights and interests. That the Pittsburgh Life & Trust Company is a Pennsylvania corporation, having a capital stock of $659,000, authorized to conduct a general life insurance business. That said company is not now, and never has been, authorized to carry on its business in the state of New York.

On information and belief: That in August or September, 1908, William C. Baldwin, then and now president of said Pittsburgh Company, acting for himself and others then associated with him in the directory of said Pittsburgh Company, and for said company, purchased from the then holders thereof, 1,948 shares of the stock of said Washington Company, paying therefor about $87.50 per share, an aggregate amount of $800,450; the shares being of the par value of $50 each. That on or about September 24, 1908, all of the directors and most of the officers of said Washington Company resigned. That immediately upon said resignation the said Baldwin and a number of his associates in the management and directory of said Pittsburgh Company were elected directors of the Washington Company. That, of said persons then so elected, the majority were then and ever since have been officers and directors and the controlling spirits of said Pittsburgh Company. That immediately thereafter the said newly elected officers and directors of the Washington Company entered upon the discharge of their duties as such, and took absolute control of the business, property, and effects of said company; they and their associates then and now holding and controlling at least 1,948 shares of the 10,000 shares of stock of said company. That the said Baldwin and his associates, the defendant Washington Company and the defendant Pittsburgh Company, each of the companies acting through their said officers and directors, in pursuance of a fraudulent conspiracy, on or about December 30, 1908, removed from the state of New York to the state of Pennsylvania all of the books, records, papers, money, choses in action, mortgages, and movable property of any substantial value belonging to the Washington Company and delivered the same to said Pittsburgh Company, and thereupon said

Washington Company discontinued and ceased to do business as a life insurance corporation in the state of New York, and at or about the same date, by a contract, or a pretended contract, with the said Pittsburgh Company made by the same officers and directors, controlling both the said companies, transferred or pretended to transfer all of its insurance in force, including its obligations and rights under its contract of insurance with the plaintiff, and other policy holders to said Pittsburgh Company, and contracted, or pretended to contract, to reinsure plaintiff and all other policy holders in the Pittsburgh Company, all without notice and in violation of the vested contract rights and interests of the plaintiff as against said Washington Company, and in its legal reserve and its properties, and also conveyed, or pretended to convey, by deeds of conveyance all of its real property and buildings in the city of New York and elsewhere to said Pittsburgh Company. That all of these acts are in violation of the laws of the state of New York and of the charter of the Washington Company, its contract obligations to plaintiff and all of the policy holders, and especially in violation of the rights of plaintiff and other policy holders to have an apportionment made of their shares of the profits or surplus of said Washington Company, which distribution some of said policy holders are entitled to from year to year and others at the end of a definite period; the plaintiff being entitled to such apportionment and distribution in the year 1910 of all right to which he will necessarily be deprived if such cessation of business and transfer of assets and contract of reinsurance is not rescinded. That all of said acts and proceedings are in violation and fraud of all the rights of all of the policy holders of said company, and all of said contracts, transfers, and deeds of conveyance of property were and are in excess of the legal rights of said Washington Company and therefore ultra vires and void. That said Washington Company, up to and on December 31, 1908, was in a solvent, safe, and prosperous condition affording ample safety and security to this plaintiff and all other policy holders therein, by reason of its surplus, its legal reserve, and its capital stock, of all of which it and its policy holders have now been deprived by said Pittsburgh Company through the acts and transactions here set out.

Wherefore plaintiff demanded judgment: (1) That the Pittsburgh Company be enjoined and restrained from paying out, selling, or in any way disposing of any of the money, choses in action, stocks, bonds, and properties, real and personal, paid over, assigned, transferred, and conveyed to it by the Washington Life, except as this court may hereafter order and direct. (2) That the Pittsburgh Company be restrained from collecting any rents, profits, interest, income, or earnings arising from or out of any of said properties. (3) That temporary receivers be appointed to take possession of the St. James building in the city of New York belonging to said Pittsburgh Company. (4) That temporary receivers be appointed for the Washington Company and all of its properties and assets, with full power and authority to take possession of all properties heretofore belonging to it and by it assigned, transferred, conveyed, or delivered to the Pitts-

burgh Company, and that full power and authority be conferred upon such receivers to bring and maintain actions at law or suits in equity in this or any other state or country, to recover the properties mentioned from the Pittsburgh Company. (5) That said temporary receivers be instructed and empowered to take possession of the home office building of the Washington Life Insurance Company at 141 Broadway, New York City, and to there re-establish the office of said company, and until the further orders of the court to collect and receive the rents and profits of said building and to resume and carry on the business of the Washington Company and protect and conserve the interest of its policy holders, creditors, and stockholders by the continuance of its business in as nearly the usual course as is found practicable, and with this end in view to demand and take over from its officers and directors and from the Pittsburgh Company all the books, records, policy records, accounts and papers, indexes, and documents of all descriptions and to continue such transaction of the business of said company until the further orders of the court. (6) That said temporary receivers be further authorized to receive and receipt for all premiums due or payable from policy holders of the Washington Company and to deposit the same in a special fund separate and distinct from the other funds of the corporation, subject to the further orders of this court, and that the Pittsburgh Company be enjoined and restrained from claiming, collecting, or receiving any such premiums, payments, or any other money which may become due to the Washington Company from any sources whatever. (7) That the temporary receivers, upon their appointment, be authorized to receive all mail addressed to the Washington Company. (8) That an order issue to restrain the county clerk of the county of New York from recording the said deeds and assignments of mortgages made by the said Washington Company until the further order of the court. (9) That the plaintiff herein have such other, further, and general relief as the nature of the case requires and to this honorable court seems just.

What the companies conceive has been accomplished by the contract of reinsurance of December 30, 1908, referred to, is evidenced by the circular signed in the name of both companies by W. C. Baldwin, president, dated at Pittsburgh and addressed to the policy holders of both companies, wherein it was stated:

"The Washington Life Insurance Company had 28,000 policy holders. The Pittsburgh Life & Trust Company had 15,000 policy holders. Therefore the merging of the business of the two companies creates a group of 43,000 lives which will greatly benefit all the policy holders of the merged group. * * * Since merging the business of the Washington Life Insurance Company and the Pittsburgh Life & Trust Company, the premium income will be more than double that of 1907, and it is reasonable to assume that the expense of the conduct of the business will be materially reduced."

It appears that, immediately after the execution of this contract, upwards of $18,000,000 of securities of the Washington Company were physically transferred from the office of the company in the city of New York to the office of the Pittsburgh Company in the city of Pittsburg, Pa. It also appears that, prior to the making of the order

at bar appealed from, the said securities had been brought back to the state of New York, and, under negotiations had between the officers of the several companies, the Attorney General of the state of New York and the superintendent of insurance, had been put into custody of the superintendent of insurance under an agreement entered into by the two companies, pending future procedure to test the validity of the contract of reinsurance, or the determination of an application to be made to admit the Pittsburgh Company to do business under the supervision of the insurance department in the state of New York, and in accordance with the provisions of the insurance law thereof.

On the 15th of February, the learned judge sitting at Special Term, Part 1, upon the return of orders to show cause why an injunction should not issue and receivers be appointed which had been granted upon the complaint and the accompanying papers, handed down a memorandum, in which he stated:

"The motion must be granted to the extent of restraining the Pittsburgh Company from removing, assigning, disposing of, pledging, or incumbering the properties, securities, moneys, and assets of the Washington Company and appointing receivers during the pendency of the action of the assets, properties, securities, books, papers, policies, moneys, stocks, bonds, mortgages, and choses in action heretofore belonging to the defendant Washington Company, and by it assigned and delivered to the Pittsburgh Company, and the receivers shall have authority to resume and carry on the business of the Washington Company until the trial which can soon take place to protect and conserve the interests of its creditors, policy holders, and stockholders."

On the 2d day of March the order appealed from herein was made. The said order overruled certain preliminary objections to the jurisdiction of the court made by the two companies, and it determined that the argument on the merits and the submission of the affidavits by the companies in opposition on the merits are not to be deemed and shall not constitute a general appearance on behalf of the Pittsburgh Company or a waiver of the preliminary objections raised by the Washington Company. From that part of the order the plaintiff appeals. Further, it restrained the Pittsburgh Company from removing, assigning, disposing of, pledging, or incumbering the properties, securities, moneys, or other assets of said Washington Company or otherwise dealing therewith, except to deliver the same to William H. Hotchkiss, as the superintendent of insurance, during the pendency of this action, or until the further order of the court. The register of deeds was restrained until the further order of the court from recording the various deeds and assignments of mortgages executed by the Washington Company to the Pittsburgh Company now on file with him, if unrecorded, and it further ordered that:

"If the defendants shall unnecessarily delay the final determination of this action, or if the conditions at present existing in respect of the assets of the defendant the Washington Life Insurance Company shall change, pending this action, so as to endanger the rights of the plaintiff in or to the security offered by such assets, he may apply for an amendment of this order upon notice by providing at the foot hereof for the appointment of a receiver or receivers, as to the court shall seem meet and proper."

From all of this order, except that portion of it from which the plaintiff appealed, the two defendants appeal.

It will be noted that none of the officers, directors, or individuals charged with fraud or conspiracy are made parties defendant. The action is solely against the two corporations. While it is alleged in the complaint that the contract of reinsurance is invalid and ultra vires, the action is not brought to rescind or annul said contract. There is no allegation of the insolvency of either company, but, on the contrary, the solvency of the Washington Life was affirmatively alleged. The Pittsburgh Company is a foreign stock corporation, and the Washington Company is a domestic stock corporation, and both life insurance companies. The action is not to dissolve either of said corporations. Although stock corporations, no stockholder of either company brings the action. A receiver is asked for certain specific real estate of the Pittsburgh Company situate in the city of New York, and a receiver for the Washington Company to take possession thereof and to continue the business of life insurance. There is no allegation of notice served upon the Attorney General of the state of the application for the order for the appointment of a receiver of this domestic life insurance company. The Pittsburgh Company appeared specially challenging the jurisdiction of the court upon the ground that it had not been properly brought into court, and the Washington Company raised certain preliminary objections.

In the view that we take of this matter, we do not deem it necessary to consider any of these preliminary objections, but proceed directly to what seems to us the controlling question, which is: Has the plaintiff as a policy holder of a domestic life insurance company, a stock corporation, standing in a court of equity to obtain an injunction and the appointment of receivers upon the facts disclosed in these papers?

The learned court at Special Term, in answer to the claim put forth by the defendants, that a policy holder has no standing in a court of equity for the redress sought because he occupies the position simply of a creditor whose claim is not in judgment, said:

"The Washington Company, though a stock corporation, is conducted on the mutual plan and the surplus of its profits above a limited dividend to the stockholders is equitably applied for the benefit of the policy holders. The policy in question has a reserve and surrender value which is fixed and payable at a specified period. Although a policy holder may technically be said to occupy the relation of a creditor to a corporation, in a company such as this he is likened more to that of an associate or capitalist, furnishing the money with which the business is conducted. Lord v. Equitable Life Assur. Soc., 109 App. Div. 252, 263, 96 N. Y. Supp. 10. In Brown v. Equitable Life Assur. Soc., 151 Fed. 1, 81 C. C. A. 1, in which the bill charged specific acts of waste, mismanagement, and unauthorized diversion of funds, the Circuit Court of Appeals held that a policy holder has a right to appeal to a court of equity for relief. This action is not to recover upon the policy, but to prevent the diversion of its assets. 'In a purely mutual company the whole body of policy holders at any given time whose policies are not yet matured have a quasi ownership in all the assets of the corporation, and are, like stockholders of an ordinary corporation, in effect cestuis que trustents.' Young v. Equitable Life Assur. Soc., 49 Misc. Rep. 347, 361, 99 N. Y. Supp. 446, affirmed 112 App. Div. 760, 98 N. Y. Supp. 1052. * * * On authority, as well as principle, the policy holders have a standing to maintain this action."

In Young v. Equitable, 49 Misc. Rep. 347, 99 N. Y. Supp. 446, the plaintiff was a stockholder as well as a policy holder. The de-

fendants, other than the company, were directors thereof. Her complaint alleged waste by said directors and demanded ·that they account therefor and pay into the treasury the amounts for which they were liable. It was therefore an action by a stockholder in the right of his corporation and in its behalf to maintain suit where the corporation had itself improperly failed to bring the same. The quotation therefore from the opinion of the learned judge at Special Term was obiter, because the company was not a purely mutual company and, as the court pointed out in its opinion:

"This is a stockholder's action simply. None other is attempted to be stated or made."

Upon appeal in 112 App. Div. 760, 98 N. Y. Supp. 1052, the Appellate Division based its decision upon the stockholder's right:

"The cause of action here is one belonging to the society, and the action is brought for its benefit. * * * The plaintiff, in its place, has assumed the burden of the prosecution. No accounting or other act by the society is required or would be proper in this action. The sole question is: Did the defendant directors mismanage the affairs of the society in the respects alleged, and, if so, how much has it lost by reason of such mismanagement?"

Lord v. Equitable, 109 App. Div. 252, 96 N. Y. Supp. 10, was an action by a stockholder attacking the action of the company in attempting to amend its charter by giving policy holders the right to vote for directors in the absence of legislation. In sustaining the action and denying the power to give such right to policy holders, the court used this language:

"The policy holder does not become a member of the corporation. He is a third party holding a contractual relation with the corporation as a distinct entity. * * * It would naturally seem as though, if it were intended by the Legislature that persons occupying merely contractual relations with the corporation were to be intrusted with the power to elect, and thus to control the corporation, there would be some provision for making the policy holders answerable in some measure at least for the conduct of the corporation; but we look in vain for any provisions of this kind. All of the duties and responsibilities are confined to the members of the corporation and the corporation itself, acting through its board of directors, while there are no duties imposed upon the policy holders."

Brown v. Equitable Life, 151 Fed. 1, 81 C. C. A. 1, mainly relied upon by the Special Term, has been reversed by the Supreme Court of the United States. Having thus examined all the cases cited by the learned court at Special Term upon this point, we find none of them an authority to sustain its position.

On the other hand, it seems to me that there is an unbroken line of authorities in the state of New York to the contrary.

In St. John v. American Mutual Life Ins. Co., 13 N. Y. 31, 64 Am. Dec. 529, the court said:

"I am not aware of any principle of law that distinguishes contracts of insurance upon lives from other ordinary contracts, or that takes them out of the operation of the same legal rules which are applied to and govern such contracts."

In Cohen v. New York Mutual Life, 50 N. Y. 610, 10 Am. Rep. 522, the court said:

"Whatever analogy there may be between mutual companies and ordinary partnerships, and the relation of the members of the two organizations, an incorporated company, although organized upon the mutual principle, is in no proper or legal sense a partnership. The defendant is a body politic and corporate, capable of contracting and of suing and being sued, and the relation between the plaintiff and the corporation is that of insured and insurer, and the rights and duties of the contracting parties are to be governed and determined by the terms of the policy by which the insurance is effected, as in other cases. Other and incidental rights are secured by the plaintiff as a member of the company, one of the corporators; but this does not make the members partners as between themselves or affect the express contracts of the corporation."

In repudiating the doctrine of partnership, the court said, in People v. Security Life Insurance Co., 78 N. Y. 114, 34 Am. Rep. 522, where the defendant was a stock company:

"Every policy holder in such a company enters into engagements with the company and not with any other policy holder. He pays the premiums upon his policy not to make a fund to insure others, but solely as a consideration of his own insurance. The company receives the money as its own and holds it as its own and may do with it what it will, except as it is restrained by some statute. * * * But they who pay their money for insurances are no more jointly interested or in any sense partners than the depositors in a bank. The depositors swell the assets of the bank, and also its liabilities, and they have a common interest that the bank shall keep its funds so as to be able to discharge its liabilities, and that is all. * * * The fund produced by the payment of all the premiums does not in any sense belong to the policy holders, but belongs exclusively to the company, and the policy holders are interested in it in the same way only that the creditors of any other corporation are interested in its funds."

In Uhlman v. New York Life Ins. Co., 109 N. Y. 421, 17 N. E. 363, 4 Am. St. Rep. 482, the court said:

"He claims now to maintain the action and have the right to an accounting upon the ground that the relation between plaintiff and defendant is not one solely of contract, but that as to the participation in the profit of this tontine system that relation is similar to one of trustee and cestui que trust. * * * We are convinced, after a careful examination of the character of the relations existing between these parties, that it cannot be said that the defendant is in any sense a trustee of any particular fund for the plaintiff, or that it acts as to him and in relation to any such fund in a fiduciary capacity. It has been held that the holder of a policy of insurance, even in a mutual company, was in no sense a partner of the corporation which issued the policy, and that the relation between the policy holder and the company was one of contract measured by the terms of the policy. * * * We think the payment of a premium by the policy holders of this class of policies is much more like that of a deposit in the bank by a depositor, as to which it is conceded there is no such relation of trustee and cestui que trust. * * * The situation of the parties is that of debtor and creditor simply."

See, also, People ex rel. Venner v. N. Y. Life Ins. Co., 111 App. Div. 183, 97 N. Y. Supp. 465.

In reversing the Circuit Court of Appeals in Brown v. Equitable Life, 151 Fed. 1, 81 C. C. A. 1, Mr. Justice Peckham for the Supreme Court of the United States, in an opinion not yet reported, said:

"The suit is brought by complainant for himself, as well as all other policy holders and annuitants of the defendant, who may choose to come in and

join the suit, and the company is the sole defendant. * * * The purpose of the averment is probably to sustain the application for a receiver made necessary, as alleged, by the wrongdoing of some of the former officers of the defendant. That, however, gives no jurisdiction for an accounting in equity as between a simple debtor and creditor and in the absence of any trust relation between them. A mere creditor, as such, has no right to that remedy. We come then to a careful analysis of the other averments in the bill, and it is seen that it is founded largely upon the theory of the existence of a trust in favor of the policy holders, past and present, of the defendant as against the defendant, its officers and stockholders, and it is asked that they, and each of them, be decreed to hold the funds and surplus, as they may be ascertained, as trustees for such persons as shall be declared to have interests in such funds and such surplus, under the decree of the court to be entered in the case. * * * In other words, they aver facts of mismanagement of the funds and wrongdoing by others, upon which a cause of action might arise against the officers and stockholders, or other persons guilty of such wrongdoing and waste, in favor of the company itself. They lay no foundation for the jurisdiction of a court of equity in such a case, unless it appears that the relation between the policy holder and the defendant is that the latter is the trustee of the former by reason of the trust relation between them resulting from the insurance policy. The complainant's contention, as above stated, that there is such a trust in the fund mentioned, has never been regarded as the law in the state of New York (Cohen v. New York Life Ins. Co., 50 N. Y. 610, 10 Am. Rep. 522; People v. Security Life, etc., Co., 78 N. Y. 114, 34 Am. Rep. 522; Bewley v. Equitable Life, 61 How. Prac. 344; Uhlman v. New York Life Ins. Co., 109 N. Y. 421, 17 N. E. 363, 4 Am. St. Rep. 482; and to the same effect, Greeff v. Equitable Life, 160 N. Y. 19, 54 N. E. 712, 46 L. R. A. 288, 73 Am. St. Rep. 659), nor anywhere else, so far as any case has been cited on the subject."

After quoting from the Uhlman Case, the opinion proceeds:

"Indeed the policy holder in the Uhlman Case occupied a much stronger position for making the claim than does the complainant, who is the holder of an ordinary life policy with rights to participate in the distribution in the surplus according to the methods, etc., adopted by the defendant, as already mentioned. The claim was, however, denied by the state court, following the decisions of the New York courts for many years. To hold that a trust is proved in this case by virtue of the charter and policy of insurance is to hold contrary to the decisions of the highest court of the state of New York for a long number of years past, without a single decision the other way in all that time. * * * And the idea that the defendant itself is liable to policy holders for the frauds or wrongdoing set out in the bill and committed by its officers or members of its board of directors against the defendant and in their personal interests, we regard as without foundation. * * * Very likely the defendant could itself maintain an action against those who have been guilty of fraudulent conduct towards it, resulting in financial loss to it, and, of course, those who are alleged to be guilty would have to be made parties. No case is therefore made for an accounting or for a receiver based upon these allegations in the bill. * * * If it is held that there is no trust, then it follows that the suit cannot be maintained in equity on the sole ground of the fraud. * * * After a careful consideration of all the facts, we are of the opinion that no cause of action is alleged in the bill for an accounting or for the appointment of a receiver, or for other equitable relief. The decree of the Circuit Court of Appeals is therefore reversed."

So that it would seem that the doctrine that a policy holder has a standing in court in an equitable action against his company upon the ground that he is a cestui que trust' has finally been set at rest in accordance with the long line of decisions in the state of New York by the final determination of the Supreme Court of the United States. I know of no theory upon which a cause of action can be spelled out'

of this complaint not based upon that doctrine. A stockholder might have a cause of action to attack the transaction upon the ground that the act of the officers and directors in making the contract for reinsurance and attempting to carry it into effect was ultra vires, and certainly the Attorney General, upon his own motion, or at the instigation of the insurance department, would have the right to question this transaction if its result is, as claimed, to practically dissolve the company, to prevent it from doing further business and to transfer such business to a foreign corporation having no right to do such business within the state of New York, and that is the protection given by the law to the policy holder.

"If an action had for its object the compelling of the trustees, directors, managers, or other officers of a corporation to account for their official conduct in the management and disposition of the property committed to their charge, then it would have to be properly brought by the Attorney General in behalf of the people; or it might be brought by a judgment creditor under sections 1781 and 1782 of the Code of Civil Procedure. * * * The objects of life insurance corporations invest them with such a public interest that the state has placed them within the superintendence of a special department, and every consideration militates in favor of the protection which the state has thrown around these companies." Swan v. Mutual Reserve Life Ass'n Co., 155 N. Y. 9, 49 N. E. 258.

The business of insurance is so important to the community that the Legislature has extended over it to an extraordinarily minute degree the protection of public supervision and control, and for such alleged wrongs as the plaintiff here complains of there is ample power and authority in the state officers having supervision of the corporation and its acts, illustrated in this very case, because, when such state officers learned of the transaction and took action, the $18,000,000 of assets were promptly brought back within the state. On the other hand, if we should change what I conceive to be the well-established rule of law, and support this action, we would lay open every insurance company to inconsiderate or wicked attacks by every policy holder, a result not to be contemplated without the gravest apprehensions of the ultimate consequences to the policy holders and those for whose benefit their earnings have been invested in insurance.

We do not pass upon the validity of the contract or the acts done thereunder, or whether or not it was ultra vires either corporation, because we do not think such matters properly before us. We hold squarely that the plaintiff has no standing in court on any cause of action set up in his complaint for any relief therein prayed.

Therefore the order, so far as appealed from by the defendants, is reversed, with $10 costs and disbursements, and the motion denied, with $10 costs to the appellants; and, so far as the plaintiff appeals, the appeal is dismissed, with $10 costs and disbursements. All concur.