MAURICE J. SILVERMAN, Respondent, *v.* PITTSBURGH LIFE AND TRUST COMPANY, Appellant.

First Department, March 23, 1917.

Insurance — life insurance with collateral agreement to pay additional premium as sub-standard risk — when assignee of policy takes subject to terms of collateral agreement — failure of insurer to credit dividends to policyholders — when right to dividends cannot be ascertained by accounting — conditions upon which assignee of policy may become entitled to paid-up policy.

Where a policy of life insurance entitled the insured on the surrender of the policy after five years, all premiums being paid, to a paid-up policy for an amount stated in an annexed table, with a proviso that any indebtedness on account of the policy should be first deducted, but it appeared that the insured, being what was known as a "sub-standard risk," made a collateral written agreement by which, in consideration of the issuance of the policy, he agreed to pay to the insurer an additional charge or premium annually, the same to be a charge against the policy

for any claims thereunder, etc., the collateral agreement is binding upon an assignee of the policy even though he was ignorant thereof at the time of the assignment, and the sums due from the insured on the collateral agreement are a valid charge against the policy in the hands of the assignee where he demands that the insurer issue a paid-up policy.

Where the policy entitled the insured to share in certain profits of the insurer arising from lapsed policies, etc., the same to be appropriated as dividends to the policyholders, and the assignee of the insured claims that proper dividends have not been credited to the policy, but the insurer contends that there were no profits from which such dividends could be apportioned, it is error for the court to appoint a referee to take and state an account of the profits of the insurer in order to determine whether dividends should have been credited to the policy, for there was no fiduciary relation between the plaintiff assignee and the defendant which would warrant such accounting.

Especially is this so where the insured expressly stipulated in the policy that he ratified and accepted any determination made by the insurer as to the amount of dividends to be apportioned to his policy.

Under said policy of insurance and the collateral agreement for additional premiums made by the insured, the assignee will be entitled to a paid-up policy only when he has paid to the insurer moneys which were due under said collateral agreement.

Appeal by the defendant, Pittsburgh Life and Trust Company, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Bronx on the 27th day of July, 1916, upon the decision of the court after a trial at the Bronx Special Term.

The judgment directed defendant to account and appointed a referee to take and state the said account.

*Finis E. Montgomery,* for the appellant.

*J. Wilson Bryant,* for the respondent.

Scott, J.:

This is an action in equity to compel the defendant to issue to plaintiff a paid-up policy of insurance upon the life of Max Mekin. The defendant has succeeded to the business, assets and liabilities of the Security Trust and Life Insurance Company, the corporation which originally issued the policy. The plaintiff holds the policy by assignment from the insured.

Among the conditions attached to the policy was one which provided that if the full premiums upon the policy be paid for

not less than five complete years, at the option of the insured, it could be surrendered within six months from the date of lapse (due to non-payment of premium) for the amount of cash named in a table. This table contained two columns, one showing the sums for which a paid-up policy might be taken out, and one showing the cash values. These were graduated according to the age of the policy. When this action was commenced the policy had run for fourteen years and on the table above referred to the paid-up value for the policy at that age was stated at $1,770, and the cash value at $865. The policy was assigned to plaintiff in 1902.

The policy also contained a provision that "Any unpaid portion of the current year's premium not yet due, or any other indebtedness on account of this policy, shall be first deducted when any settlement is made." The annual premium, as it was written on the face of the policy, was $129, and it is conceded that the insured or the plaintiff has paid this amount regularly. The company issuing the policy appears, however, to have made it a part of its business to insure what are known as "sub-standard risks," for which a higher rate of premium was charged than was customary with regard to normal or standard risks, and Mekin, the assured, was apparently a substandard risk, since it appears that before taking out this policy he had been rejected by two other life insurance companies. When he took out the policy in question he signed a "Certificate of Advances" in the following form: "In consideration of Policy No. 9946 having been issued to me by the Security Trust and Life Insurance Company at select life rates, I hereby agree that the said Company shall charge on the Third day of February, 1901, and annually thereafter, the sum of Sixty and 00/100 ($60.00) Dollars, in payment of additional premium due on said Policy No. 9946, which amount with like additional yearly advances (which shall be entered on the back hereof), shall be a charge against said policy, or any claims thereunder, with five per centum interest, until the said advances are extinguished by any dividends that may be apportioned to said policy, or shall have been otherwise paid to the Company.

" It is also understood and agreed that if at any time evi-

dence satisfactory to the Company be furnished, showing that the insured has become a ' select life,' the extra premium charged will be discontinued and the premiums on this policy thereafter correspondingly reduced."

It does not clearly appear whether or not plaintiff ever knew of this certificate and of the annual charges against the policy arising therefrom, which with the accumulated interest thereon, amounted at the date of the trial to $1,053, and the first question presented is whether or not that clause is a valid charge against the policy in the hands of the plaintiff. This question the court at Special Term resolved in favor of the defendant for reasons which entirely commend themselves to our judgment.

The second question in the case arises from a provision as to the distribution among the policyholders of certain savings and profits, which reads as follows: "Dividends. That all savings from mortality, and all profits from lapses, shall be apportioned as dividends to the participating policyholders of this Company, as follows:

"If the insured be living and this policy be in force at the end of ten years from the date hereof, the insured will be credited with his share of the above dividends, and if this policy be continued in force thereafter, the insured will share in the distribution of said dividends annually thereafter.

"At the option of the insured dividends declared to the credit of this policy can be,

"1st. Withdrawn in cash, or

"2d. Converted into paid-up insurance, subject to satisfactory evidence of good health, or

"3d. Converted into Life Annuities."

As to the method of determining how such distribution shall be made the policy provides as follows: "That in any distribution of surplus the determination by the Company of the amount to be apportioned to any policyholder is hereby ratified and accepted."

The complaint charges that plaintiff has not been credited with his share of the dividends which are alleged to have amounted to $800 and upwards, and has not shared in the distribution of said dividends annually as provided in the above-quoted condition of the policy,

The answer denies that there have been any earnings or profits from which any such dividends could be apportioned to the policy in suit, owing, as it is said, to the excessive mortality on the policies issued by the Security Trust and Life Insurance Company of which plaintiff's policy was one.

On the trial no evidence was given tending to show that any such excess profits had been realized. The court held that plaintiff was entitled to a paid-up policy for $1,770, less the amount due on the above-mentioned certificate of advances, plus all dividends and profits which should have been apportioned to the policy according to its terms, and appointed a referee to take and state the account " of all moneys received and disbursed, and of the profits and dividends paid and to be paid to the non-participating policyholders of the Security Trust and Life Insurance Company by the Security Trust and Life Insurance Company" and the present defendant from the date of the policy to the date of the trial. The court correctly held as a matter of law that " there is no trust or fiduciary relationship between the plaintiff and the defendant." (*Uhlman* v. *New York Life Ins. Co.,* 109 N. Y. 421; *Greeff* v. *Equitable Life Assurance Society,* 160 id. 19; *Equitable Life Assurance Society* v. *Brown,* 213 U. S. 25; *Russell* v. *Pittsburgh Life & Trust Co.,* 132 App. Div. 217.) This rule of law being so firmly established it was manifestly error to order a general accounting. (See cases above cited and those cited in *Russell* v. *Pittsburgh Life & Trust Co., supra.*) More especially is this so because the insured had expressly stipulated by the terms of the contract between himself and the original issuer of the policy that he ratified and accepted any determination made by the insuring company as to the amount to be apportioned to his policy. (*Greeff* v. *Equitable Life Assurance Society, supra.*) It is not contended that any such apportionment has been made. The provision for an accounting was, therefore, unauthorized. The relief which plaintiff asks is the issue of a paid-up policy. By so much of the decision of the Special Term, with which we concur, he owed the defendant at the time of the trial $1,053, which by the terms of the policy must " be first deducted when any settlement is made." The

plaintiff is, therefore, entitled to a paid-up policy only after paying the sum thus found to be due from him. He has not offered to make such payment. Doubtless if he should do so a paid-up policy would be issued to him.

The judgment appealed from must, therefore, be reversed and a new trial granted, with costs to appellant to abide the event.

CLARKE, P. J., LAUGHLIN, SMITH and SHEARN, JJ., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event. Order to be settled on notice.

---

EDWARD HILLS, Respondent, v. INTERBOROUGH RAPID TRANSIT COMPANY, Appellant.

First Department, March 23, 1917.

Railroad — negligence — injury to passenger attempting to board elevated railroad train — erroneous charge as to duty of defendant.

Where in an action to recover for personal injuries there is an issue of fact as to whether the plaintiff had boarded a car on the defendant's elevated railroad and was knocked off by the closing of the platform gate after he had reached a place of safety, or whether he had attempted to board the car after the gate had closed and the train had started, it was error for the court to read to the jury section 138 (now section 239) of the Railroad Law which in substance provides that no elevated railroad train shall be permitted to start until every passenger from the platform or station who desires to board the car shall have done so and to charge specifically that it was the duty of the railroad company to wait until every passenger had boarded the car.

This, because, while the charge accurately stated the defendant's statutory duty, it had no bearing on any question before the jury, for even if the defendant's guard had closed the gate before all passengers had boarded the car, it would not free a passenger who then attempted to board it from an imputation of contributory negligence.

APPEAL by the defendant, Interborough Rapid Transit Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 27th day of September, 1916, upon the verdict of a jury for $5,000, later reduced by the court to $2,500, and also

from an order entered in said clerk's office on the 4th day of October, 1916, denying defendant's motion for a new trial made upon the minutes.